167 P.3d 593 (2007)
STATE of Washington, Respondent,
v.
Brian W. FRAWLEY, Appellant.
No. 25043-1-III.
Court of Appeals of Washington, Division 3.
September 13, 2007.
*594 David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Respondent.
SWEENEY, C.J.
¶ 1 Our Supreme Court has made it clear that the trial of a criminal defendant may not be closed to the public absent a rigorous evaluation and balancing of a number of factors. State v. Bone-Club, 128 Wash.2d 254, 258-59, 906 P.2d 325 (1995). Here, the trial judge excluded the public by conducting a portion of the jury voir dire in chambers without waivers from either the defendant or anyone present in the courtroom. We accordingly reverse and remand for a new trial.

FACTS
¶ 2 Margaret Cordova disappeared during the early morning hours of January 17, 2004, in Spokane, Washington. Jerome Tanks, a friend and relative of Ms. Cordova, was the last person to see her alive. Ms. Cordova left his apartment between 2:00 a.m. and 2:30 a.m. on January 17. He assumed that she had returned to the apartment of other relatives within the same apartment complex. Ms. Cordova never arrived at the other apartment. Her boyfriend and her mother reported her missing on January 18, 2004.
¶ 3 A man who was collecting firewood north of Spokane discovered Ms. Cordova's body on February 22, 2004. Animals had eaten away much of the upper part of the body and little remained but the skeleton. Police found a ligature around her neck with one end secured to her right wrist.
¶ 4 The lower body from the hips to the feet was fairly intact; however, it was unclothed except for a pair of panties that was torn and hanging around her right leg. Ms. Cordova's ankles were tied by a blue drawstring from pajama bottoms she had been wearing.
¶ 5 Dr. Sally Aiken is the Chief Medical Examiner for Spokane County. She testified that it was impossible to determine exactly where or when Ms. Cordova died. Dr. Aiken could not determine whether the ligature around her neck was applied before or after she died. All of the soft tissue around Ms. Cordova's neck was gone. Dr. Aiken concluded that about 20 bruises on Ms. Cordova's lower body were inflicted before her death. She also concluded that the ligatures on Ms. Cordova's legs were tied before she was killed. The DNA[1] of the semen taken from Ms. Cordova's body matched Brian Frawley's DNA.
¶ 6 Mr. Frawley lived in an apartment complex in Spokane with his girl friend, Jessica Hensley, and her brother, Josh Hensley. Mr. Frawley occasionally used Ms. Hensley's Pontiac Grand Am car. Mr. Hensley worked at Northern Farms, which is located next to the area where Ms. Cordova's body was found. Ms. Hensley or Mr. Frawley often drove Mr. Hensley to work. The Washington State Patrol Crime Laboratory found fabric fibers on Ms. Cordova's sweatshirt and pajama bottoms consistent with fibers from the seat of the Pontiac Grand Am.
¶ 7 Mr. Hensley recalled that in either December or January, he, Mr. Frawley, and another friend smoked methamphetamine in the apartment after Ms. Hensley had gone to *595 bed. Sometime between 10:00 and 12:00 p.m., Mr. Frawley left in Ms. Henley's Pontiac. He took the drugs and Ms. Hensley's cell phone with him. Mr. Hensley and his friend called the phone repeatedly because they wanted Mr. Frawley to bring the drugs back to the apartment. Mr. Frawley returned early the next morning. He was crying and upset. He reported that he had hit a girl with Ms. Hensley's car and buried her in the woods. Mr. Hensley checked the car but saw no damage.
¶ 8 Records for Ms. Hensley's cell phone showed a series of six short phone calls received between 10:00 p.m. on January 16 and 3:12 a.m. on January 17. Ms. Cordova disappeared during that time.
¶ 9 Police detectives interviewed Mr. Frawley. He acknowledged his relationship with Ms. Hensley and that he had access to her car. He denied knowing or ever having had sex with Ms. Cordova. He told the detectives that he did not kill Ms. Cordova.
¶ 10 The State charged Mr. Frawley with first degree felony murder. It alleged first or second degree rape or first or second degree kidnapping as the underlying felony.
¶ 11 Mr. Frawley testified at his trial. He said that he first met Ms. Cordova in July or August 2003. Ms. Cordova had been hitchhiking. Mr. Frawley gave her a lift to a shopping mall. He said that they smoked some marijuana together and then went their separate ways. Mr. Frawley said that he next saw Ms. Cordova on January 16, around 10:00 p.m. She was talking on a pay phone outside a fast food restaurant when she recognized him from their previous encounter. She approached him, and they decided to drive to a more private location to smoke methamphetamine. Mr. Frawley said that he and Ms. Cordova drove to a parking lot in back of a drug store where Ms. Cordova traded sex for methamphetamine.
¶ 12 Mr. Frawley said that he then drove her back to where he had picked her up because she was expecting someone to give her a ride. Mr. Frawley says he dropped her off and then drove to Wal-Mart to buy a headlight. He then headed home to the apartment where he arrived at approximately 11:20 p.m. A Wal-Mart manager testified that the store closed at 10 p.m. on January 16.
VOIR DIRE
¶ 13 At trial, the court divided the voir dire of the jurors into two parts. The first consisted of the voir dire of individual jurors (individual voir dire). This involved a short interview with each juror based on the answers he or she gave in response to a questionnaire. This was conducted in the judge's chambers outside the presence of the public or Mr. Frawley. It is undisputed that Mr. Frawley waived his right to be present at this phase of the trial. The court did not, however, ask whether Mr. Frawley would waive his constitutional right to have the public present. Nor did the court ask any of those in the courtroom whether they would waive the right to a public trial.
¶ 14 The court conducted the second phase of the voir dire (general voir dire) in the courtroom. The court, after appropriate inquiry of Mr. Frawley, concluded that Mr. Frawley knowingly and voluntarily waived his right to have the public present during this phase of the voir dire. The court did not request a waiver from any member of the public or press, if any were present.
¶ 15 The jury found Mr. Frawley guilty of first degree felony murder.

DISCUSSION
PUBLIC TRIAL
¶ 16 Mr. Frawley contends that the trial court denied him his constitutional right to a public trial by excluding the public during the voir dire phase of his trial. The State responds that Mr. Frawley freely waived any right to a public trial before the general voir dire of the jury panel. The State also argues that the individual voir dire was appropriately kept from public view because of GR 31(j),[2] which presumes the privacy *596 of juror information. In any event, the State continues, the Bone-Club factors were satisfied so there was no violation of Mr. Frawley's rights.
¶ 17 Whether a defendant's right to a public trial has been violated is a question of law that we review de novo. State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005). The right to a public trial is guaranteed by the state constitution. Article I, section 10 of the Washington State Constitution guarantees that justice in all cases shall be administered openly. And article I, section 22 of our constitution guarantees that "[i]n criminal prosecutions the accused shall have the right . . . to have a speedy public trial." These same rights are also guaranteed in the Sixth amendment to the United States Constitution.
¶ 18 Our state Supreme Court has recently held that these guarantees include "`the process of juror selection' which `is itself a matter of importance, not simply to the adversaries but to the criminal justice system.'" In re Pers. Restraint of Orange, 152 Wash.2d 795, 804, 100 P.3d 291 (2004) (quoting Press-Enter. Co. v. Superior Court, 464 U.S. 501, 505, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)); see Brightman, 155 Wash.2d at 517, 122 P.3d 150; State v. Easterling, 157 Wash.2d 167, 179-82, 137 P.3d 825 (2006).
¶ 19 The State argues that jury questionnaires are typically private documents and that access to them can only be acquired by petitioning the court upon a showing of good cause under GR 31(j). The State urges that this "private" status extends also to any question/response made in relation to that questionnaire. But, it offers no authority for this position. Further, the State's position is undercut by the fact that all discussion of the questionnaires was held on the record. Report of Proceedings at 66.
¶ 20 We can find no material distinction between individual voir dire of jurors in camera and general voir dire of the jury panel. Jury selection is jury selection. Orange, 152 Wash.2d at 804, 100 P.3d 291 (quoting Press-Enter., 464 U.S. at 505, 104 S.Ct. 819); see Brightman, 155 Wash.2d at 517, 122 P.3d 150; Easterling, 157 Wash.2d at 179-82, 137 P.3d 825.
¶ 21 Second, while court rules, specifically GR 31(j), or other considerations of jury privacy can and should influence the judge's decision to exclude the public from certain phases of a trial, they do not trump constitutional requirements that the trial be public. State v. Pelkey, 109 Wash.2d 484, 490, 745 P.2d 854 (1987) (court cannot sustain an interpretation of a court rule which contravenes the constitution); CrRLJ 1.1 ("These rules shall not be construed to affect or derogate from the constitutional rights of any defendant.").
¶ 22 In this case, there was no discussion one way or the other about excluding the public from the individual voir dire. And "[a] waiver is the intentional relinquishment . . . of a known right or privilege." State v. Sweet, 90 Wash.2d 282, 286, 581 P.2d 579 (1978). Here, Mr. Frawley was never presented with an opportunity to waive his right to have the public present at the individual voir dire, therefore he cannot have knowingly and intelligently waived that right.
¶ 23 "In order to protect the accused's constitutional public trial right, a trial court may not close a courtroom without, first, applying and weighing five requirements as set forth in Bone-Club and, second, entering specific findings justifying the closure order." Easterling, 157 Wash.2d at 175, 137 P.3d 825; Bone-Club, 128 Wash.2d at 261, 906 P.2d 325 ("Lacking a trial court record showing any consideration of Defendant's public trial right, we cannot determine whether closure was warranted."); Brightman, 155 Wash.2d at 518, 122 P.3d 150 ("Because the record in this case lacks any hint that the trial court considered Brightman's public trial right as required by Bone-Club, we cannot determine whether the closure was warranted."). Here, it is undisputed that the trial court did not go through the Bone-Club requirements on the record, nor did it enter specific findings justifying the closure.
¶ 24 The State invites us to weigh the Bone-Club factors on review and decide whether the trial process in this case was properly closed to the public. Resp't's Br. at *597 10-14. We review a trial judge's consideration of these factors as found in the record; we do not consider them for the first time on appeal. Bone-Club, 128 Wash.2d at 261, 906 P.2d 325; Brightman, 155 Wash.2d at 518, 122 P.3d 150. And, in any event, the trial court record and the briefing on appeal here are inadequate to weigh and balance those factors.
¶ 25 "Prejudice is necessarily presumed where a violation of the public trial right occurs." Easterling, 157 Wash.2d at 181, 137 P.3d 825. "The denial of the constitutional right to a public trial is one of the limited classes of fundamental rights not subject to harmless error analysis." Id. The remedy here is reversal and a new trial. Id. at 174, 137 P.3d 825.
SUFFICIENCY OF THE EVIDENCE
¶ 26 Mr. Frawley next argues that the evidence is insufficient to convict him of Ms. Cordova's murder. He argues that the evidence does not support the necessary predicates for felony murder, here rape and kidnapping.
¶ 27 Evidence must be sufficient to support each element of the crime. State v. Green, 94 Wash.2d 216, 221-22, 616 P.2d 628 (1980). We will draw all reasonable inferences from the evidence in favor of the State. State v. Lopez, 79 Wash.App. 755, 768, 904 P.2d 1179 (1995). Circumstantial evidence is just as reliable as direct evidence. State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997).
¶ 28 Here, the State charged Mr. Frawley with murdering Ms. Cordova in the course of committing first or second degree rape or first or second degree kidnapping. Clerk's Papers at 25. The State must then prove each element of the predicate felony. State v. Quillin, 49 Wash.App. 155, 164, 741 P.2d 589 (1987) (citing State v. Gamboa, 38 Wash. App. 409, 412, 685 P.2d 643 (1984)). The court did not instruct the jury that it had to unanimously agree on a specific predicate crime or crimes. State v. Petrich, 101 Wash.2d 566, 683 P.2d 173 (1984). Therefore, we must be able to conclude that substantial evidence supports each alternative predicate crime to remand for new trial. State v. Smith, 159 Wash.2d 778, 783, 154 P.3d 873 (2007).
¶ 29 The State charged first or second degree rape or first or second degree kidnapping as the alternative predicate crimes. The higher degree of those crimes necessarily includes the inferior degree. RCW 10.61.003; State v. Tamalini 134 Wash.2d 725, 731, 953 P.2d 450 (1998). Therefore, we need only decide whether the evidence is sufficient to support first degree rape and first degree kidnapping. If the State presented sufficient evidence to support those crimes, it necessarily presented evidence sufficient to support the inferior degree crime (in both cases second degree). State v. Berlin, 133 Wash.2d 541, 545-46, 947 P.2d 700 (1997) (citing State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978)).
¶ 30 First degree murder includes murder committed in the course of rape or kidnapping. RCW 9A.32.030(1)(c).[3]
¶ 31 To prove first degree kidnapping, the State must show that the defendant intentionally abducted the victim with the intent to inflict bodily injury or extreme mental distress.[4] To prove first degree rape, the State must show that the defendant engaged in sexual intercourse with the victim by forcible compulsion and that the defendant either kidnapped the victim, inflicted serious physical injury on the victim, or used or threatened *598 to use a deadly weapon.[5] We then look for sufficient evidence in this record for both first degree rape and first degree kidnapping. Quillin, 49 Wash.App. at 164, 741 P.2d 589 (citing Gamboa, 38 Wash.App. at 412, 685 P.2d 643).
¶ 32 Here, the State showed that Ms. Cordova was in a car Mr. Frawley used. Mr. Frawley's semen was in Ms. Cordova's body. Ms. Cordova was bound by the feet and neck. Her panties were torn and pulled down around her right thigh. She was left in a place where no one would be likely to find her. Mr. Frawley was familiar with that location. The cause of Ms. Cordova's death was homicide. Mr. Frawley told a friend that he had hit a girl with his car and taken her body to the woods on the same day that Ms. Cordova went missing. The testimony of multiple witnesses described Ms. Cordova as being in a committed and happy relationship with her child's father. Members of Ms. Cordova's family testified that she did not use methamphetamine. Finally, nothing corroborated Mr. Frawley's version of events.
¶ 33 The evidence supports the abduction and ultimate death of Ms. Cordova at Mr. Frawley's hand. The showing supports a finding of first degree kidnapping based on any of three separate means: with intention (1) to commit a felony (here rape), (2) to inflict bodily injury (ligatures around the neck and feet, pre-mortem injuries and death), and (3) to inflict extreme mental distress (ligatures around the neck and feet, pre-mortem injuries, panties pulled down, and death). RCW 9A.40.020(1)(b), (c), (d).
¶ 34 First degree rape requires a showing that the defendant engaged in sexual intercourse with another person by forcible compulsion where the defendant kidnaps the victim or inflicts serious physical injury. RCW 9A.44.040(1)(b), (c). Here, Mr. Frawley had sexual intercourse with Ms. Cordova. Again, Ms. Cordova was bound by the neck. Her pajama pants drawstring was tied around her legs. Her panties were torn and pulled down around her right thigh.
¶ 35 In sum, the evidence supports a jury finding that Mr. Frawley kidnapped Ms. Cordova, elevating the rape to first degree. RCW 9A.44.040(1)(b). The evidence that Mr. Frawley inflicted serious physical injury to Ms. Cordova provides an alternate means of first degree rape. RCW 9A.44.040(1)(c).
¶ 36 Pro se Mr. Frawley makes a number of other assignments of error. But we need not address them given our disposition of the case.
¶ 37 We reverse the conviction and remand for new trial.
I CONCUR: SCHULTHEIS, J.
BROWN, J. (dissenting).
¶ 38 I agree that the evidence sufficiently supports Brian William Frawley's conviction. However, because Mr. Frawley waived his right to be present for the follow-up, in chamber questioning of individual potential jurors regarding their answers to pretrial publicity questionnaires and requested that process, I disagree that his public trial right was violated. Our facts differ significantly from those in State v. Brightman, 155 Wash.2d 506, 122 P.3d 150 (2005) where the court reversed, partly for failure to provide a public trial.
¶ 39 In Brightman, the court, sua sponte, told the attorneys, without defense objection, that the courtroom would be closed during jury selection. Id. at 511, 122 P.3d 150. The Brightman court favorably discussed In re Pers. Restraint of Orange, 152 Wash.2d 795, 100 P.3d 291 (2004) where, over a defense objection, the trial court directed individual in chambers voir dire. Mr. Frawley argues Brightman and Orange mandate a reversal. I disagree.
*599 ¶ 40 Here, unlike the facts in Brightman and Orange, Mr. Frawley's counsel, not the court, initiated the waiver process by telling the court that Mr. Frawley would waive his presence for the individual in chambers voir dire. Then, the court thoroughly examined Mr. Frawley about his decision to permit in chambers voir dire to assure a knowing, voluntary, and intelligent waiver with advice of counsel. See Report of Proceedings (RP) at 64-68. Further, unlike Brightman and Orange where the trial courts preemptively ordered closure, the trial court flatly offered to conduct the individual questioning in open court or on the record, in chambers at Mr. Frawley's choice. Certainly, a defendant can waive a constitutional right. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (waiver of right to counsel). And a waiver may even be inferred by the defendant's conduct. See State v. Thomas, 128 Wash.2d 553, 559, 910 P.2d 475 (1996) ("As with the right to self-representation, the right not to testify, and the right to confront witnesses, the judge may assume a knowing waiver of the right from the defendant's conduct."). Mr. Frawley's conduct and his waivers are consistent. Mr. Frawley specifically waived his public trial right for the subsequent general voir dire. See RP at 864-866.
¶ 41 In Brightman, Mr. Brightman's counsel was found ineffective for failing to object to closing jury selection. In contrast, Mr. Frawley's counsel advised Mr. Frawley about the waiver and advanced Mr. Frawley's waiver decision and the in chambers procedure. Mr. Frawley personally expressed his understanding to the court that the potential jurors would more likely answer freely and honestly if interrogation was conducted in chambers, outside the presence of persons in the courtroom. It follows that Mr. Frawley understood the public needed to be excluded to accomplish the desired purpose of furthering his opportunity to select a fair and impartial jury.
¶ 42 In sum, our focus has been the individual in chambers voir dire. No disagreement exists that Mr. Frawley's additional specific waiver of his right to a public trial during the general voir dire is fully supported in this record. Mr. Frawley's conduct and his waivers are consistent; both undermine his claim that he was deprived of a fair trial. Further, I would hold that the trial court did not err in failing to sequester the jury and in failing to give a unanimity instruction, issues not reached by the majority. In my view, Mr. Frawley received a fair trial. I would affirm. Accordingly, I respectfully dissent.
NOTES
[1] Deoxyribonucleic acid.
[2] Individual juror information, other than name, is presumed to be private. The court may permit access only upon a showing of good cause, and may require that the information not be disclosed to other persons.
[3] RCW 9A.32.030 provides:

(1) A person is guilty of murder in the first degree when:
. . . .
(c) He or she commits or attempts to commit the crime of either . . .
(2) rape in the first or second degree, . . . (5) kidnapping in the first or second degree, and in the course of or in furtherance of such crime . . . he or she, or another participant, causes the death of a person other than one of the participants.
[4] RCW 9A.40.020 provides:

(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:
. . . .
(c) To inflict bodily injury on him; or
(d) To inflict extreme mental distress on him.
[5] RCW 9A.44.040 provides:

(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:
(a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; or
(b) Kidnaps the victim; or
(c) Inflicts serious physical injury, including but not limited to physical injury which renders the victim unconscious.