173 P.3d 948 (2007)
STATE of Washington, Respondent,
v.
Nicholas G. DUCKETT, Appellant.
No. 25614-6-III.
Court of Appeals of Washington, Division 3.
November 27, 2007.
*949 William D. Edelblute, Attorney at Law, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Respondent.
STEPHENS, J.
¶ 1 We recently addressed the same question presented in this appeal. State v. Frawley, 140 Wash.App. 713, 167 P.3d 593 (2007). During voir dire, the trial judge here questioned selected jurors individually in the jury room, based on their responses to a questionnaire *950 that asked about their experiences with sexual abuse. Nicholas Duckett waived his right to be present. However, the court never advised Mr. Duckett of his right to a public trial, nor asked him to waive this right. We conclude, as we did in Frawley, that this procedure violates a criminal defendant's public trial right, and reverse Mr. Duckett's conviction and remand for a new trial. We take this opportunity to expand our analysis to explain why our state constitution requires this result and why it is not altered by the presumption of privacy afforded juror information by court rule. We also note that closure remains an option for a trial court if the court makes a record under the proper analysis.

FACTS
¶ 2 The State charged Nicholas G. Duckett with one count of second degree rape, one count of third degree rape and one count of first degree burglary. The matter proceeded to jury trial in the Spokane County Superior Court. The trial judge told prospective jurors that they would be provided with a questionnaire containing "some questions that are somewhat of a personal nature." Report of Proceedings (Aug. 14, 2006) (RP) at 14. Specifically, the questionnaire asked two questions concerning the prospective jurors' experiences with sexual abuse. The trial judge told the jurors that the questionnaires would be filed in the court file under seal and not accessible to anyone without a court order. She told Mr. Duckett and his lawyer that follow-up questioning of those jurors whose questionnaire responses indicated some experience with sexual abuse would take place outside the courtroom stating, "I generally do it in my jury room, Counsel, . . . so as to maintain some privacy." RP at 46. Apparently, 16 jurors were so questioned, though the record does not contain any transcript of this voir dire.
¶ 3 At the time the trial judge laid out her procedure, the following exchange took place:
[DEFENSE COUNSEL]: I just for the record, Your Honor, I just talked to Mr. Duckett as to whether or not he wants to be present during that. I think he's entitled to. He indicated he does not wish to be present, so the record should reflect that.
THE COURT: And Mr. Duckett is entitled to and I never ask them whether they want to. I assume they will unlessassume they wish to be present unless they voluntarily tell me something different.
So, Mr. Duckett, you do have a right to be present during that questioning, but you're electing not to be; is that correct?
[MR. DUCKETT]: Can I have one second, Your Honor?
THE COURT: Sure.
[MR. DUCKETT]: (Pause) Judge, so far, I'm gonna stick with my attorney on this. He said it's for general knowledge that I to be there at the moment. So I'm going to agree with him not to be there.
THE COURT: All right. I presume that [defense counsel] will give you a summary of what occurred and what jurors were excused, if it were appropriate to excuse jurors.
[DEFENSE COUNSEL]: Yes, Your Honor, I will.
RP at 46-47.
¶ 4 A jury was selected and empanelled. Following a two-day trial, the jury found Mr. Duckett guilty of second degree rape. This appeal follows.

ANALYSIS
¶ 5 Preliminarily, it is important to identify what this case is aboutand not about. It is not about limiting the ability of the trial courts to develop procedures that respect the privacy interests of prospective jurors and encourage more forthright answers to sensitive voir dire questions. Rather, we address the constitutional considerations required to implement such procedures, and our inability as an appellate court to engage in a post-hoc justification of what we may agree is a sensible procedure in the absence of such an analysis in the trial court. Whether a trial court procedure violates the right to a public trial is a question of law we review de novo. State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005). Our Supreme Court has made *951 clear that the trial court must engage in the five-part analysis set out in State v. Bone-Club, 128 Wash.2d 254, 258-59, 906 P.2d 325 (1995), before conducting all or a portion of voir dire outside of the public forum of the courtroom. In re Pers. Restraint of Orange, 152 Wash.2d 795, 100 P.3d 291 (2004). Here, as in Frawley, the trial court conducted a portion of voir dire in chambers without engaging in the necessary Bone-Club analysis. This requires reversal, and the remedy is a new trial.
The Bone-Club Analysis
¶ 6 Article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution guarantee the right to a public trial.[1] Article I, section 10 of the Washington State Constitution provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This provision secures the public's right to open and accessible proceedings. State v. Easterling, 157 Wash.2d 167, 174, 137 P.3d 825 (2006). These provisions assure a fair trial, foster public understanding and trust in the judicial system and give judges the check of public scrutiny. Brightman, 155 Wash.2d at 514, 122 P.3d 150; Dreiling v. Jain, 151 Wash.2d 900, 903-04, 93 P.3d 861 (2004). While the public trial right is not absolute, it is strictly guarded to assure that proceedings occur outside the public courtroom in only the most unusual circumstances. Easterling, 157 Wash.2d at 174-75, 137 P.3d 825; Brightman, 155 Wash.2d at 509, 122 P.3d 150; Orange, 152 Wash.2d at 804-05, 100 P.3d 291; Bone-Club, 128 Wash.2d at 259, 906 P.2d 325.
¶ 7 The guaranty of open criminal proceedings extends to voir dire. Orange, 152 Wash.2d at 804, 100 P.3d 291. Bone-Club and later Orange set out the standards for closing all or any portion of a criminal trial. Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325; Orange, 152 Wash.2d at 805, 100 P.3d 291. The court in Bone-Club adopted five workable guidelines drawn from case law construing Washington Constitution article I, section 10, and concluded this analysis is also necessary to protect a criminal defendant's rights under article I, section 22. Bone-Club, 128 Wash.2d at 258-60, 906 P.2d 325; see also Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 36-39, 640 P.2d 716 (1982) (setting forth five-part analysis under article I, section 10).
¶ 8 The court in Bone-Club set forth the necessary analysis:
"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
4. The court must weigh the competing interests of the proponent of closure and the public.
5. The order must be no broader in its application or duration than necessary to serve its purpose."
Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325 (alteration in original) (quoting Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 210-11, 848 P.2d 1258 (1993)); see also Ishikawa, 97 Wash.2d at 36-39, 640 P.2d 716.
¶ 9 Preliminarily, at oral argument the State suggested that a criminal defendant's public trial right cannot be based on article I, section 10 because the defendant lacks standing to assert the public's right. This fails to appreciate the court's independent obligation to safeguard the open administration of justice. Article I, section 10 is mandatory. Rauch v. Chapman, 16 Wash. 568, 575, 48 P. 253 (1897). Moreover, the right secured by *952 article I, section 10 is fully present even when a defendant asserts only rights under article I, section 22 and the Sixth Amendment, as the court has adopted the Ishikawa analysis in this context. Bone-Club, 128 Wash.2d at 259, 906 P.2d 325 (noting "the same closure standard for both the section 10 and section 22 rights").
¶ 10 The five-part analysis includes both substantive and procedural requirements. Orange, 152 Wash.2d at 807, 100 P.3d 291. The court in Ishikawa made clear that the trial court must weigh the competing constitutional interests and enter appropriate findings and conclusions that should be as specific as possible. Ishikawa, 97 Wash.2d at 38, 640 P.2d 716; see also Orange, 152 Wash.2d at 807, 100 P.3d 291.
¶ 11 Here, the trial court did not identify the relevant considerations or enter findings and conclusions on the necessary factors. The State concedes as much. The State instead urges us to consider the Bone-Club factors on appeal, and conclude that closing this portion of the voir dire to the public was justified. This we cannot do. Whether to close a proceeding to public scrutiny is a decision vested in the sound discretion of the trial judge weighing the competing interests. See Ishikawa, 97 Wash.2d at 45, 640 P.2d 716. The question before us is not whether we would have made the same decision as the trial judge had we considered the necessary factors, but whether the trial judge's decision is supported by her consideration of these factors. Absent a record showing that the trial judge considered the public trial right as required under Bone-Club, we cannot determine whether the court was warranted in conducting a portion of voir dire in chambers. See Brightman, 155 Wash.2d at 518, 122 P.3d 150. The presumptive remedy is a new trial. Id.; Orange, 152 Wash.2d at 814, 100 P.3d 291.
Waiver
¶ 12 The State nonetheless contends that Mr. Duckett waived his right to a public trial when he agreed not to be present during the in chambers questioning of the selected jurors. As a result, the State argues, he is precluded from raising the issue on appeal.
¶ 13 It is well settled that a criminal defendant's right to a public trial is an issue of constitutional magnitude that may be raised for the first time on appeal. Easterling, 157 Wash.2d at 173 n. 2, 137 P.3d 825 (holding this involves a "`manifest error affecting a constitutional right'" under RAP 2.5(a)); see also Brightman, 155 Wash.2d at 514-15, 122 P.3d 150; Orange, 152 Wash.2d at 800, 100 P.3d 291; Bone-Club, 128 Wash.2d at 257, 906 P.2d 325. The failure to assert this right at trial does not effect a waiver, nor free the court from its independent obligation to consider public trial rights before closing all or a portion of the proceedings. Brightman, 155 Wash.2d at 514-15, 122 P.3d 150; Bone-Club, 128 Wash.2d at 257, 261, 906 P.2d 325.
¶ 14 As to the State's argument that Mr. Duckett validly waived his public trial right by conduct, any waiver must be addressed under the Bone-Club analysis. A constitutional waiver of some trial rights may be inferred from conduct. See State v. Thomas, 128 Wash.2d 553, 559, 910 P.2d 475 (1996) (noting waiver of right to testify or right to self-representation may be found when defendant does not take the stand, or appears through counsel). The right to a public trial has never been viewed in this context. The distinct nature of the public trial right is clear from the rigor of the constitutional analysis required under Bone-Club. It encompasses not simply the defendant's individual interest in being present, but also the public's interest. Bone-Club, 128 Wash.2d at 261, 906 P.2d 325; see also Easterling, 157 Wash.2d at 187, 137 P.3d 825 (Chambers, J., concurring; observing that "the constitutional requirement that justice be administered openly is not just a right held by the defendant. It is a constitutional obligation of the courts"). Accordingly, the burden is on the trial court to affirmatively provide the defendant and members of the public an opportunity to object. See Easterling, 157 Wash.2d at 176 & n. 8, 137 P.3d 825. There is no meaningful opportunity to object "unless the court informs potential objectors of the nature of the asserted interests." Bone-Club, *953 128 Wash.2d at 261, 906 P.2d 325; Ishikawa, 97 Wash.2d at 39, 640 P.2d 716.
¶ 15 Here, the court never advised Mr. Duckett of his public trial right or asked him to waive it. He certainly could not then make a knowing, intelligent and voluntary waiver of this constitutional right. While Mr. Duckett was told he had the right to be present during individual questioning of the selected jurors, and validly waived that right, that is all he waived. We disagree that he "presumably was aware of the right to have the public present" and impliedly waived it, when this right was never addressed. See Br. of Resp't at 9. Moreover, we question whether Mr. Duckett could waive the public's right to open proceedings. Any closure of a public judicial proceeding required the trial court to engage in the Bone-Club analysis. That was not done here.
General Rule 31 and "Private" Voir Dire
¶ 16 Finally, the State argues that the presumptive privacy afforded juror information under GR 31 means that voir dire concerning juror responses to questionnaires does not implicate the public trial right.[2]
¶ 17 GR 31 applies to all court records. It is merely a procedural tool that facilitates compliance with the requirement of public access to judicial information. GR 31(a); see 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE GR 31, Supreme Court Press Release Concerning GR 31, at 40-42 (6th ed. Supp.2007). GR 31(j) states that "[i]ndividual juror information, other than name, is presumed to be private" and sets forth procedures for gaining access to individual juror information upon a showing of good cause. Id. at 39; see also GR 31(k) (limiting access to master jury source list). GR 31 was adopted in 2004 following changes in Judicial Information System procedures implementing electronic access to court information.
¶ 18 GR 31 has not heretofore been tested against the constitutional right to a public trial. We are not entirely without guidance, however, as to the proper application of the rule. We read GR 31 in accord with GR 15, which provides a uniform procedure for the sealing of court records. Appellate courts of this state have construed the standard for sealing documents under GR 15 as subject to the constitutional requirement of public records and proceedings set out in Ishikawa. Ishikawa, 97 Wash.2d at 36-39, 640 P.2d 716; see In re Dependency of J.B.S., 122 Wash.2d 131, 140, 856 P.2d 694 (1993); In re Dependency of G.A.R., 137 Wash.App. 1, 11-13, 150 P.3d 643 (2007). This is in keeping with the general principle that a court rule will not be construed to circumvent or supersede a constitutional mandate. See State v. Pelkey, 109 Wash.2d 484, 490, 745 P.2d 854 (1987). Accordingly, we do not construe GR 31 to relieve the trial court of its obligation to engage in the Bone-Club analysis before closing all or any portion of voir dire to the public.
¶ 19 The privacy interests of jurors acknowledged by GR 31 are simply part of the Bone-Club analysis. Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325. In a context presenting equally compelling privacy interests, our Supreme Court invalidated a statute that would have circumvented the constitutional inquiry, recognizing that the presumption of open judicial proceedings requires a case-by-case consideration under the five-part analysis. Eikenberry, 121 Wash.2d at 210-11, 848 P.2d 1258 (striking down statute provision preventing disclosure of information identifying child sexual assault victims, as inconsistent with Ishikawa). Similarly, GR 31 cannot substitute for the particularized constitutional inquiry.
¶ 20 We will not then read GR 31 as carving out non-public portions of a jury trial. See Orange, 152 Wash.2d at 804, 100 P.3d 291 (stating, "[t]he guaranty of open criminal *954 proceedings extends to `[t]he process of juror selection,' which `is itself a matter of importance, not simply to the adversaries but to the criminal justice system'") (quoting Press-Enter. Co. v. Superior Court, 464 U.S. 501, 505, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). In this case only a limited portion of voir dire was held outside the courtroom, but this does not excuse the failure to engage in a Bone-Club analysis. As the Supreme Court recognized in Orange and confirmed in Easterling, the guaranty of a public trial under our constitution has never been subject to a de minimis exception. Orange, 152 Wash.2d at 812-14, 100 P.3d 291; Easterling, 157 Wash.2d at 180-81, 137 P.3d 825. The closure here was deliberate, and the questioning of the prospective jurors concerned their ability to serve; this cannot be characterized as ministerial in nature or trivial in result. See Easterling, 157 Wash.2d at 181, 137 P.3d 825.

CONCLUSION
¶ 21 The trial court violated Mr. Duckett's public trial right by conducting a portion of voir dire in chambers without first weighing the necessary factors. Prejudice is presumed, and the remedy is a new trial. Bone-Club, 128 Wash.2d at 261-62, 906 P.2d 325. This is "one of the limited classes of fundamental rights not subject to harmless error analysis." Easterling, 157 Wash.2d at 181, 137 P.3d 825; see also State v. Marsh, 126 Wash. 142, 147, 217 P. 705 (1923) (holding that when a defendant is denied a public trial "`the law conclusively presumes that he has suffered an actual injury'") (quoting People v. Yeager, 113 Mich. 228, 230, 71 N.W. 491 (1897)); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (recognizing denial of public trial right as structural error). We reverse and remand for a new trial.
I CONCUR: SWEENEY, C.J.
BROWN, J. (dissenting).
¶ 22 GR 31(j) provides for individual juror privacy consistent with a defendant's right to a fair public jury trial. Nicholas Duckett contends, for the first time on appeal, that his second degree rape conviction should be reversed because the trial court violated his public trial rights by following the procedure he agreed to for his benefit. Under RAP 2.5(a)(3) he does not show a manifest constitutional error. Moreover, as explained below, I do not believe Mr. Duckett fairly characterizes the process used as a "closure" within public trial boundaries. In my view, no public trial "closure" has occurred since the information was initially confidential under GR 31(j).
¶ 23 In open court, in Mr. Duckett's presence, the judge explained to the jury without any objection: "The purpose of having a juror questionnaire . . . is to ask that you answer some questions that are somewhat of a personal nature in confidence." Report of Proceedings (RP) (Aug. 14, 2006) at 14. The judge elaborated: "The original questionnaires will be filed in our court file under seal. That means they are not accessible by anybody without a court order." Id. The materials resulting from "privately" talking to the jurors about their responses, "will be collected from the lawyers and destroyed." Id. The judge then read the questions in open court. Sixteen jurors responded positively to the questionnaire. The judge assured the jurors the confidential questionnaire answers would be used in questioning those responding positively, but the interview process would be conducted "privately" and the materials generated would be collected and destroyed. Id.
¶ 24 Later, the judge told the parties that she generally conducted private questioning of questionnaire responses "in [her] jury room . . . so as to maintain some privacy." Id. at 46. Defense counsel then told the judge that he had talked with Mr. Duckett and Mr. Duckett did not want to be present during that questioning. The judge informed Mr. Duckett he had "a right to be present," and Mr. Duckett responded he agreed with his attorney and he would not be present to obtain "general [juror] knowledge." Id. at 47. All other jury questioning was conducted in open court in full public view.
¶ 25 RAP 2.5(a) precludes considering issues for the first time on appeal. RAP *955 2.5(a)(3) accepts a manifest error affecting a constitutional right. The first test used for deciding the applicability of RAP 2.5(a)(3) (conceded here), is "whether the alleged error is truly constitutional." State v. Kronich, 160 Wash.2d 893, 899, 161 P.3d 982 (2007) (citations omitted). The second test requires determining whether the error is "manifest" and involves deciding whether the error had "practical and identifiable consequences in the trial of the case." Id. Purely formalistic errors are not manifest. Id. In my view, Mr. Duckett fails the second test.
¶ 26 The claimed error is "formalistic" and without "practical and identifiable consequences in the trial of the case" since the questionnaire answers were confidential from the outset by court rule and were not open to the public. Therefore, exploring confidential answers to the questionnaires in a limited setting open to the parties and their counsel does not present a public trial issue except in a strained and formalistic sense. Nothing in this process undermined the public's trust and confidence in the case outcome or disturbed Mr. Duckett's rights. Indeed, the process enhanced Mr. Duckett's opportunity to receive a fair trial by encouraging maximum juror participation and candor. Mr. Duckett points to no practical and identifiable consequence to him of the court's chosen procedure.
¶ 27 Under GR 31(j) individual juror information collected by the court "other than name, is presumed to be private." Further, "[t]he court may require that juror information not be disclosed to other persons." GR 31(j). In balance, GR 31(j) provides a procedure for disclosing "individual juror information under the control of the court" to listed persons including a member of the public on showing "good cause" after trial conclusion. Public trial principles and fair trial principles are maintained in balance with public expectations and juror confidentiality interests. The flaw in Mr. Duckett's closure argument is that it is incorrectly premised on the proposition that the confidential materials were open to the public from the outset. But, considering GR 31(j), one cannot close what is not open.
¶ 28 Yes, a criminal defendant has a constitutional right to a public trial, including jury selection. In re Pers. Restraint of Orange, 152 Wash.2d 795, 804-05, 100 P.3d 291 (2004). There the trial court excluded Mr. Orange's family (and the public, including spectators) from general voir dire over his objection because of space limits. Notably, the Orange court did not discuss or decide whether private juror questioning about confidential questionnaire responses violated Mr. Orange's public trial rights. Our case is far different. First, unlike Mr. Orange, Mr. Duckett did not object to the procedure, but believed it advantageous to him. Second, the judge explained the process and the purpose was to maintain juror privacy, not to address a space limitation like in Orange. Third, Mr. Duckett's attorney counseled him about the situation and Mr. Duckett waived his presence; Mr. Orange objected. Fourth, the time involved here was very limited compared to the two day closure in Orange.
¶ 29 While I believe our case differs somewhat from State v. Frawley, 140 Wash.App. 713, 167 P.3d 593 (2007) (Brown, J., dissenting), because I do not believe any closure occurred, it probably does not matter. On the other hand, some of the similarities concern me. The judge never actually ordered the public excluded or the courtroom closed. We do not know if any members of the public were actually present when the procedures were discussed and adopted or may have been excluded. No public objections are recorded. Recently, these similarities helped influence Division One of this court to reject public trial defect contentions in State v. Momah, ___ Wn.App. ___, ___, 171 P.3d 1064 (declining to follow Frawley to the extent it "holds that all in-chambers proceedings are per se closed to the public").
¶ 30 In sum, the judge's chosen procedure is consonant with the reasoning in Orange. The judge identified a compelling interest, used the least restrictive means to achieve that purpose, informed Mr. Duckett of his right to be present, and explained the process in open court without objection from Mr. Duckett or any member of the public who might have been present. Granted, the process was not perfect, it never is, but the *956 process comported well with accepted fair trial principles. GR 31(j) partly encourages public participation in our jury system by assuring reasonable juror privacy in confidential juror information, but it also observes public trial principles by providing a process to review public requests for juror information. In my view, no "closure" occurred by following the privacy requirements of GR 31(j) because the questioned process was not open to the public from the outset. If any balancing of principles were called for, this judge struck the balance well within reasonable fair trial limits.
¶ 31 I would affirm. Accordingly, I respectfully dissent.
NOTES
[1] Article I, section 22 of the Washington Constitution provides: "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial." The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."
[2] As adjunct to this argument, the State suggests that the courtroom was not in fact closed by the trial court's decision to interview the selected jurors in chambers. To the extent the State's argument is that the court did not enter a closure order, we look to the record to determine the presumptive effect of the court's directive. See Brightman, 155 Wash.2d at 516, 122 P.3d 150. The trial judge stated she intended to interview the selected jurors in a jury room. The State bears the burden on appeal to show that, despite the court's ruling, a closure did not occur. Id. at 516 n. 6, 122 P.3d 150. The State has made no showing.