214 P.3d 158 (2009)
STATE of Washington, Respondent,
v.
Travis William COLEMAN, Appellant.
No. 61498-3-I.
Court of Appeals of Washington, Division 1.
August 17, 2009.
*159 Heidi Joanne Jacobsen-Watts, King County Prosecuting Attorney's Office, Seattle, WA, for Respondent.
Cassandra L. Stamm, Offices of Cassandra Stamm PLLC, Seattle, WA, for Appellant.

PUBLISHED IN PART
ELLINGTON, J.
¶ 1 Travis Coleman was convicted of two counts of first degree child molestation for conduct involving his nine year old nephew. In this appeal, he principally contends the court violated his right to a public trial by sealing jury questionnaires. We agree that the court erred in its sealing procedure, but the error did not violate Coleman's right to a public trial. Because the error was not structural, the proper remedy is not reversal, but remand for reconsideration of the sealing order. We find no merit in the remainder of Coleman's arguments, and affirm in all other respects.

BACKGROUND
¶ 2 When TMB was nine years old, he lived for a time with his grandparents and Coleman. When he returned to live with his mother, he disclosed that Coleman had sexually abused him on numerous occasions. His mother immediately contacted the police.
¶ 3 TMB described the abuse to his mother, to a child interview specialist, and to a pediatrician trained in sexual abuse cases. He indicated that Coleman had engaged him in viewing child pornography, kissing with tongues, mutual masturbation, and oral sex. The abuse first occurred during a family trip to a cabin, and regularly thereafter while TMB resided with Coleman (20 to 40 times in all).
¶ 4 The State charged Coleman with one count of rape of a child in the first degree and three counts of first degree child molestation. All counts had the same charging period. Because the incident at the cabin *160 occurred in another county, it was not included among the charges.
¶ 5 At trial, the State introduced recordings of TMB's interviews with the investigator and pediatrician. TMB's live testimony differed from these recorded statements. For example, TMB testified he thought the abuse only happened three times, including the time at the cabin, and he denied that he ever touched Coleman's penis. TMB testified that he was embarrassed to be in court and found it tough to talk about the abuse.
¶ 6 The jury convicted Coleman of two counts of molestation, acquitted him of the third, and did not reach a verdict on the rape charge. Coleman appeals.

DISCUSSION
¶ 7 The chief issue in this appeal is the court's handling of jury questionnaires. Members of the venire completed questionnaires that included certain matters of sexual history. The jury was then questioned in open court, selected and sworn.
¶ 8 Three court days later, the court, apparently on its own motion, ordered the questionnaires sealed,[1] making the following finding:
The court finds compelling circumstances for sealing the documents indicated below:
Jury questionnaires containing personal sexual history of prospective jurors related to issues in this case. The individual juror's right to privacy in this information greatly outweighs the public's right to access the court files.[2]
The order provided that trial and appellate defense counsel and the King County Prosecutor's Office were "authorized to review the documents and to purchase copies thereof without further court order."[3] Additionally, the order provided that "[i]n the event of an application for the opening or copying of the sealed documents, notice shall be given or attempted to [the prosecutor's office and defense counsel] and hearing noted."[4] No party objected.
¶ 9 Coleman contends the court's failure to undertake a State v. Bone-Club[5] analysis before entering the sealing order violated his right and that of the public to an open and public trial. He contends that the error is structural and that the required remedy is a new trial.[6]
¶ 10 Whether a trial court procedure violates the right to a public trial is a question of law. Our review is de novo.[7]
¶ 11 Both article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee criminal defendants the right to a public trial.[8] In addition, article I, section *161 10 of the Washington Constitution secures the public's right to open and accessible proceedings.[9] These provisions "assure a fair trial, foster public understanding and trust in the judicial system and give judges the check of public scrutiny."[10] The guarantee of open criminal proceedings extends to jury selection, which is important "`not simply to the adversaries but to the criminal justice system.'"[11]
¶ 12 In Bone-Club, the Washington Supreme Court set out the standards for closing all or any portion of a criminal trial.[12] The court adopted a five part analysis necessary to protect both the public's right under article I, section 10 and the defendant's rights under article I, section 22:
"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a `serious and imminent threat' to that right.
2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
4. The court must weigh the competing interests of the proponent of closure and the public.
5. The order must be no broader in its application or duration than necessary to serve its purpose."[[13]]
In State v. Waldon,[14] we held the same analysis applies to the sealing of court documents.
¶ 13 Coleman argues that a jury questionnaire is part of jury selection and must therefore remain open to the public. He relies heavily on recent cases disapproving the practice of conducting individual voir dire in private, whether to protect juror privacy or to keep potentially prejudicial information from tainting the jury pool.[15]
¶ 14 The State points out that these cases involved private voir dire, whereas here, the jury was questioned in open court. But article 1, section 10 ensures public access to court records as well as court proceedings.[16] The State does not contend jury questionnaires filed with the clerk and sealed by the court are not court records. The State offers no meaningful way to distinguish court records containing written responses to questionnaires from oral responses during voir dire.
¶ 15 The State argues, however, that the questionnaires are not public information under General Rule (GR) 31(j). GR 31 states that "[a]ccess to court records is not absolute and shall be consistent with reasonable expectations of personal privacy." Subsection (j) concerns juror information:
Individual juror information, other than name, is presumed to be private. After the conclusion of a jury trial, the attorney for a party, or party pro se, or a member of the public, may petition the trial court for access to individual juror information *162 under the control of court. Upon a showing of good cause, the court may permit the petitioner to have access to relevant information. The court may require that juror information not be disclosed to other persons.
The State contends GR 31 "demonstrates that the Supreme Court did not intend to subject private juror information to the same procedure or scrutiny as the sealing of other court documents."[17]
¶ 16 But "`[c]ourt rule[s] cannot be interpreted to circumvent or supersede a constitutional mandate.'"[18] In State v. Duckett,[19] Division Three of this court considered a somewhat similar scenario. There, the trial court gave prospective jurors a questionnaire, stating that it would be "filed in the court file under seal and not accessible to anyone without a court order."[20] Jurors whose questionnaires indicated experience with sexual abuse were then questioned individually in the jury room.
¶ 17 Duckett appealed, arguing that private questioning of the jurors violated his public trial right. Reading GR 31 in accord with GR 15, the majority agreed, concluding that "[t]he privacy interests of jurors acknowledged by GR 31 are simply part of the Bone-Club analysis."[21] The majority rejected the dissent's argument that no courtroom closure occurred because the information provided was confidential under GR 31(j), and "one cannot close what is not open."[22]
¶ 18 The State points out that Duckett did not address whether sealing the questionnaires required a Bone-Club analysis, and argues that the "questionnaires themselves are not a court proceeding,"[23] so sealing them was not a court closure requiring a Bone-Club analysis. But as pointed out above, the State offers no rationale for distinguishing between court records and court proceedings for purposes of this analysis, and we held in Waldon that an order sealing court records requires a Bone-Club analysis.[24]
¶ 19 We agree with the Duckett court that GR 31 must be read in accord with GR 15, that both rules are subject to the constitutional mandate of open records, and that the presumption of juror privacy provided in GR 31 is properly considered as part of the Bone-Club analysis.[25][26]
¶ 20 Under these authorities, the court should have conducted a Bone-Club analysis before sealing the questionnaires. Violation of the public's right to open court records *163 requires remand for reconsideration of the order.
¶ 21 Coleman contends that sealing the questionnaires without conducting the Bone-Club analysis amounted to structural error, from which prejudice is presumed and for which a new trial is warranted.[27] On these facts, we do not agree that structural error occurred. The questionnaires were used only for selection of the jury, which proceeded in open court. The questionnaires were not sealed until several days after the jury was seated and sworn. Unlike answers given verbally in closed courtrooms, there is nothing to indicate that the questionnaires were not available for public inspection during the jury selection process. Thus, the subsequent sealing order had no effect on Coleman's public trial right, and did not "`create defect[s] affecting the framework within which the trial proceeds.'"[28]
¶ 22 The error was not structural. Coleman does not suggest any possible prejudice to him resulting from the order. Reversal is therefore not the remedy.
¶ 23 We remand for reconsideration of the closing order under Bone-Club and Waldon, but otherwise affirm.
¶ 24 The remainder of this opinion has no precedential value and will filed for public record in accordance with RCW 2.06.040.
WE CONCUR: LEACH and APPELWICK, JJ.
NOTES
[1] The jury was selected and sworn on January 29, 2008. The sealing order was entered February 4, 2008.
[2] Clerk's Papers at 188.
[3] Id.
[4] Id.
[5] 128 Wash.2d 254, 906 P.2d 325 (1995).
[6] Coleman does not assert a violation of the First Amendment. Relying on Press-Enter. Co. v. Superior Court, 464 U.S. 501, 508-10, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), several courts have held that jury questionnaires are presumptively open under the First Amendment. See, e.g., State ex rel. Beacon Journal Publishing Co. v. Bond, 98 Ohio St.3d 146, 781 N.E.2d 180 (2002) (observing that "virtually every court having occasion to address this issue has concluded that such questionnaires are part of voir dire and thus subject to a presumption of openness") (citing cases). Interestingly, these cases seek to balance juror privacy, the defendant's right to a fair trial in which prospective jurors feel free to give candid responses to highly personal questions, and the public's right to open proceedings by endorsing practices specifically rejected by numerous Washington decisions, to wit, in camera voir dire proceedings during which a prospective juror may discuss sensitive matters privately, on the record, with counsel present; sealing of the transcript of that proceeding; and redaction of jurors' names from questionnaires before they become part of the public record.
[7] State v. Duckett, 141 Wash.App. 797, 802, 173 P.3d 948 (2007) (citing State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005)).
[8] Brightman, 155 Wash.2d at 514, 122 P.3d 150. Article I, section 22 of the Washington Constitution states: "In criminal prosecutions the accused shall have the right ... to have a speedy public trial." The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."
[9] Duckett, 141 Wash.App. at 803, 173 P.3d 948 ("`[j]ustice in all cases shall be administered openly, and without unnecessary delay'" (quoting WASH. CONST. art. I, § 10)).
[10] Id. (citing Brightman, 155 Wash.2d at 514, 122 P.3d 150).
[11] In re Pers. Restraint of Orange, 152 Wash.2d 795, 804, 100 P.3d 291 (2004) (quoting Press-Enter., 464 U.S. at 505, 104 S.Ct. 819).
[12] 128 Wash.2d at 258-59, 906 P.2d 325.
[13] Id. (quoting Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 210-11, 848 P.2d 1258 (1993)); see also Seattle Times v. Ishikawa, 97 Wash.2d 30, 36-39, 640 P.2d 716 (1982).
[14] 148 Wash.App. 952, 967, 202 P.3d 325 (2009) (petition for review pending). The trial court here did not have the benefit of this decision, which came after Coleman's trial.
[15] See State v. Sadler, 147 Wash.App. 97, 110, 193 P.3d 1108 (2008); State v. Erickson, 146 Wash.App. 200, 211, 189 P.3d 245 (2008); Duckett, 141 Wash.App. at 809, 173 P.3d 948. Petitions for review have been filed in each of these cases, and are either still pending or have been stayed pending decisions in State v. Momah, 141 Wash.App. 705, 171 P.3d 1064 (2007), rev. granted, 163 Wash.2d 1012, 180 P.3d 1291 (2008) and State v. Strode, Wash. Sup.Ct. No. 80849-0.
[16] Waldon, 148 Wash.App. at 957, 202 P.3d 325.
[17] Resp't's Br. at 24.
[18] Waldon, 148 Wash.App. at 965, 202 P.3d 325 (quoting Duckett, 141 Wash.App. at 808, 173 P.3d 948); see also In re Det. of D.F.F., 144 Wash.App. 214, 183 P.3d 302, rev. granted, 164 Wash.2d 1034, 197 P.3d 1185 (2008) (Mental Proceedings Rule 1.3 violates article I, section 10 by making mental illness commitment proceedings presumptively closed).
[19] 141 Wash.App. 797, 173 P.3d 948 (2007).
[20] Id. at 801, 173 P.3d 948.
[21] Id. at 808, 173 P.3d 948.
[22] Id. at 811, 173 P.3d 948 (Brown, J., dissenting).
[23] Resp't's Br. at 25.
[24] 148 Wash.App. at 967, 202 P.3d 325.
[25] See Duckett, 141 Wash.App. at 808, 173 P.3d 948.
[26] We also agree with the Duckett observation that "this case is ... not about limiting the ability of the trial courts to develop procedures that respect the privacy interests of prospective jurors and encourage more forthright answers to sensitive voir dire questions." Id. at 802, 173 P.3d 948. This area of the law is fast developing, as demonstrated by the fact that the trial judge in this case did not have the benefit of our decision in Waldon.

Further, several related cases are pending before the Washington Supreme Court. See State v. Momah, 141 Wash.App. 705, 171 P.3d 1064 (2007), rev. granted in part, 163 Wash.2d 1012, 180 P.3d 1291 (2008) (argued June 10, 2008; question is whether right to public trial was violated when trial court conducted a portion of voir dire in chambers after potential jurors asked to be questioned individually and court and both counsel agreed); State v. Strode, No. 80849-0 (argued June 10, 2008; issue is whether trial court violated right to public trial by conducting voir dire in chambers and whether defendant waived challenge by participating without objection).
We are confident that trial judges will develop appropriate procedures within constitutional mandates once those mandates are clear.
[27] See Duckett, 141 Wash.App. at 809, 173 P.3d 948; Erickson, 146 Wash.App. at 211, 189 P.3d 245; Sadler, 147 Wash.App. at 118, 193 P.3d 1108; Momah, 141 Wash.App. at 709, 171 P.3d 1064.
[28] In re Det. of Kistenmacher, 163 Wash.2d 166, 185, 178 P.3d 949 (2008) (Sanders, J., concurring in part, dissenting in part) (alteration in original) (quoting Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).