[No. 36885-4-II.   Division Two.   May 12, 2009.]

The State of Washington, *Respondent*, v. Patricia Heath, *Appellant*.

122

*David B. Koch* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*David J. Burke, Prosecuting Attorney*, and *David Bustamante, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Patricia Heath appeals her convictions for unlawful possession of a firearm, arguing that the trial court violated her right to a public trial by conducting portions of voir dire and some pretrial motions in chambers without first analyzing the factors prescribed in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). The State argues that the trial court was not obligated to perform a *Bone-Club* analysis because the court never explicitly ordered a closure for the pretrial motions hearing or part of the jury voir dire. Based on our recent decision in

*State v. Erickson*, 146 Wn. App. 200, 189 P.3d 245 (2008), we reverse and remand for a new trial.

## FACTS

¶2 The State charged Patricia Heath with two counts of unlawful possession of a firearm.

¶3 Before trial, Heath's attorney submitted 16 motions in limine. After hearing some of the motions on August 7, 2007, the trial court adjourned, stating:

> Counsel, with all due respect to both of you, we'll take this up at 8:15. We'll just take these points up. That way counsel will have a chance to -- both counsel to look at it.
>
> See everybody tomorrow in chambers.

Report of Proceedings (RP) (Aug. 7, 2007) at 34.

¶4 The next day, the trial court heard the remaining motions in chambers before starting the trial. Following a brief morning recess to allow defense counsel to interview potential prosecution witnesses, the parties renewed their arguments about pretrial motions. The trial court never explicitly ordered the pretrial hearing to be "closed." It also did not analyze the chambers proceedings pursuant to *Bone-Club* or specifically find the need for a chambers hearing.

¶5 Later, during its explanation of the voir dire process, the trial court told the potential jurors:

> Also, if you have -- if you want to say something but you really don't want to say it in public because you're concerned that maybe you might say something that you shouldn't say in front of everyone else, or if it's just a personal matter, just let me know that or let the attorneys know that when they ask you a particular question and I'll write your number down and we will take time to take all those people who are in that category, we'll have you go one at a time into chambers, the attorneys and myself, we'll go into chambers and on the record in there you can tell us what it is you didn't want to say out in front of everybody else.

RP (Aug. 8, 2007) Jury Voir Dire (JVD) at 12-13. None of the jurors asked to be individually interviewed in chambers.

¶6 The court subsequently asked if any juror would start the trial with any bias or prejudice; juror 8 answered affirmatively. The court then stated:

> Number 8, I'm -- we're going to go ahead and interview you -- I'm just going to put you down on the list right now and interview you in chambers, so the attorneys will not be asking you any questions except in chambers.

RP (Aug. 8, 2007) JVD at 16. Neither the prosecutor nor the defense attorney objected. After the trial court finished questioning the jurors and allowed counsel to question them, the prosecutor moved to interview juror 8 "in chambers at this point." RP (Aug. 8, 2007) JVD at 18. The defense attorney stated, "No objection" in response. RP (Aug. 8, 2007) JVD at 18. Again, the trial court did not engage in a *Bone-Club* analysis or set forth on the record any findings regarding the necessity of questioning juror 8 in chambers.

¶7 The jury found Heath guilty of both counts.

## ANALYSIS

¶8 Heath argues that the trial court violated her right to a public trial when it conducted portions of pretrial hearings and voir dire in chambers without engaging in a *Bone-Club* analysis on the record. The State argues that no *Bone-Club* analysis was necessary because (1) the trial court did not explicitly close the hearings and (2) neither party moved to close the hearings. The State also argues that even if there was a closure, Heath either invited the error or waived her right to public hearings.[1]

---

[1] The State also argues that Heath does not have standing to assert the public's right to observe the trial. Heath, however, asserts her own right to a public trial, not the public's right. As noted in *Bone-Club*, "the five criteria a trial court must obey to protect the public's right of access before granting a motion to close *are likewise mandated to protect a defendant's right to [a] public trial." Bone-Club*, 128 Wn.2d at 259 (emphasis added); *see also Erickson*, 146 Wn. App. at 205 n.2.

¶9 Whether a trial court procedure violates the right to a public trial is a question of law we review de novo. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). The remedy for such violation is reversal and remand for new trial. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004). A defendant who fails to object at the time of the closure does not waive the right. *Brightman*, 155 Wn.2d at 514-15.

¶10 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution each guarantee a criminal accused the right to a public trial. *State v. Easterling*, 157 Wn.2d 167, 174, 137 P.3d 825 (2006). Additionally, article I, section 10 of the Washington Constitution states, "Justice in all cases shall be administered openly," which provides the public itself a right to open, accessible proceedings. *Easterling*, 157 Wn.2d at 174. The right to public trial ensures the defendant a fair trial, reminds officers of the court of the importance of their functions, encourages witnesses to come forward, and discourages perjury. *Brightman*, 155 Wn.2d at 514.

¶11 Although the right to a public trial is not absolute, the "protection of this basic constitutional right clearly calls for a trial court to resist a closure motion except under the most unusual circumstances." *Bone-Club*, 128 Wn.2d at 259. Thus, under *Bone-Club*, a court must weigh five factors to determine whether it may properly close a portion of a trial.[2] *Bone-Club*, 128 Wn.2d at 258. The

---

[2] Those five factors are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

court must also enter specific findings justifying closure. *Easterling*, 157 Wn.2d at 175.

¶12 Because the guaranty of open criminal proceedings extends to jury selection and some pretrial motions, the trial court must engage in a *Bone-Club* analysis before closing the court to such proceedings. *See Orange*, 152 Wn.2d at 804 (jury selection); *Bone-Club*, 128 Wn.2d 254 (pretrial suppression hearing); *Easterling*, 157 Wn.2d at 171-72 (pretrial severance hearing). In *Erickson*, 146 Wn. App. at 211, we held that conducting voir dire out of the courtroom constitutes a "closure" that mandates *Bone-Club* analysis even when the trial court has not explicitly closed the proceedings. *See also State v. Frawley*, 140 Wn. App. 713, 720, 167 P.3d 593 (2007) (Division Three holding the same). *But see State v. Momah*, 141 Wn. App. 705, 714, 171 P.3d 1064 (2007) (Division One holding that conducting voir dire outside of the courtroom absent an explicit order does not constitute a "closure"), *review granted*, 163 Wn.2d 1012 (2008).[3]

¶13 Where the plain language of the trial court's ruling imposes a closure, the burden is on the State to overcome the strong presumption that the courtroom was closed. *Brightman*, 155 Wn.2d at 516; *e.g.*, *State v. Duckett*, 141 Wn. App. 797, 807 n.2, 173 P.3d 948 (2007) (stating burden on appeal was on State to show that closing did not occur where "trial judge stated she intended to interview the selected jurors in a jury room").

¶14 *Erickson* controls here. In *Erickson*, the trial court asked the prospective jurors if any of them wanted to be talked to privately and told them, " 'You have the option to ask to have your questions asked and answered with fewer people present. . . . [I]t's certainly possible that the answers may involve an area that you are uncomfortable talking about in front of such a large group.' " *Erickson*, 146

---

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[3] The Supreme Court heard oral argument in this case on June 10, 2008.

Wn. App. at 204 (alterations in original). Although the trial court in *Erickson* never explicitly ordered that closure, it interviewed four jurors in the jury room with only counsel and the court reporter present. *Erickson*, 146 Wn. App. at 204. We held that "[b]ecause the decision to remove individual questioning of prospective jurors outside the courtroom has more than an inadvertent or trivial impact on the proceedings, . . . it acts as a closure for purposes of *Bone-Club*." *Erickson*, 146 Wn. App. at 209.

¶15 Here, the trial court's ruling moving voir dire of juror 8 to chambers even more strongly suggests that the trial court intended to exclude the public from the individual voir dire. The trial court stated, "[I]f you want to say something but you really *don't want to say it in public . . .* just let me know [and] we'll have you go one at a time into chambers." RP (Aug. 8, 2007) JVD at 13 (emphasis added).

¶16 The State argues that the trial court was not required to engage in a *Bone-Club* analysis because neither party moved to close the hearings, thereby triggering the need for such an analysis. This argument fails because a trial court's sua sponte decision to close public hearings triggers the need for a *Bone-Club* analysis.[4] *E.g., Brightman*, 155 Wn.2d at 511.

¶17 The State also argues that Heath waived her right to public hearings on the disputed issues. But a defendant, by failing to object, does not waive her constitutional right to a public trial. *Brightman*, 155 Wn.2d at 514-15 (citing *Bone-Club*, 128 Wn.2d at 257); *State v. Marsh*, 126 Wash. 142, 146, 217 P. 705 (1923). Heath did not waive the right by failing to object.

¶18 We conclude that the trial court violated Heath's right to a public trial by hearing pretrial motions and interviewing juror 8 in chambers without first engag-

---

[4] The fact that the closure was the trial court's sua sponte decision also precludes the State's argument that it was invited error. *See State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (Under the invited error doctrine, a court should decline to review a claimed error if the appealing party induced the court to err.).

ing in a *Bone-Club* analysis. Because we presume prejudice, we reverse and remand for a new trial. *See Erickson*, 146 Wn. App. at 211.

HOUGHTON, J., concurs.

¶19 HUNT, J. (dissenting) — I respectfully dissent. I agree with the State that the trial court was not required to do a *Bone-Club* analysis because it never explicitly closed the pretrial motions hearing or voir dire to the public.[5] I would follow Judge Quinn-Brintnall's dissent in *State v. Erickson*, 146 Wn. App. 200, 189 P.3d 245 (2008),[6] my dissent in *State v. Sadler*, 147 Wn. App. 97, 138, 193 P.3d 1108 (2008) (Hunt, J., dissenting),[7] and Division One's opinion in *State v. Momah*, 141 Wn. App. 705, 171 P.3d 1064 (2007), *review granted*, 163 Wn.2d 1012 (2008).[8] And I would affirm Heath's convictions.

## I. PUBLIC NOT EXCLUDED FROM PRETRIAL MOTIONS HEARING

¶20 Heath's defense counsel submitted 16 motions in limine. On the afternoon of August 7, 2007, the trial court heard some, but not all, of the motions in the courtroom of the small Pacific County Courthouse. At the end of that hearing, the trial court stated:

> Counsel, with all due respect to both of you, we'll take this up at 8:15. We'll just take these points up. That way counsel will have a chance to -- both counsel to look at it.
>
> See *everybody* tomorrow in chambers.

---

[5] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

[6] On March 31, 2009, the Supreme Court granted the State's motion to stay a petition for review in *Erickson*, pending *Momah*, No. 81096-6, and *Strode*, No. 80849-0.

[7] On February 3, 2009, the Supreme Court deferred review in *Sadler*, No. 82405-3, pending *Momah*, No. 81096-6, and *Strode*, No. 80849-0.

[8] The Supreme Court heard oral argument in *Momah*, No. 81096-6, on June 10, 2008, but it had not yet published an opinion as of the time we filed our opinion and dissent in *Heath*.

Report of Proceedings (RP) (Aug. 7, 2007) at 34 (emphasis added). The trial court said nothing about closing this hearing to the public or excluding anyone; on the contrary, the trial court expressly invited "everybody." And no one objected.

¶21 As the State explained to us at oral argument, in the small Pacific County Courthouse, the law library is in the judge's "chambers," but it is not closed off from the space open to the public.[9] The next morning, the trial court heard the remaining motions in "chambers" before the trial began. Again, there were no objections to this procedure voiced by anyone; nor does it appear from the record that any member of the public was excluded. As in *Momah*, "Nothing in the trial court's language or actions indicates that any member of the public [was] excluded from this proceeding." *Momah*, 141 Wn. App. at 714. The circumstances here were unlike those in *Easterling*, where there was no dispute that trial court "fully closed the courtroom . . . and the public [was] excluded from this closed proceeding." *State v. Easterling*, 157 Wn.2d 167, 175, 137 P.3d 825 (2006).[10]

¶22 Because the trial court never "closed" this pretrial hearing on counsel's motions in limine, the trial court did not need to engage in a *Bone-Club*[11] analysis before conducting the hearing in the "law library/chambers." Therefore, it was not necessary for the trial court to set forth on the record any *Bone-Club* findings addressing the necessity for conducting the pretrial hearing outside the courtroom.

---

[9] *See* Pacific County Local Rule 13, providing:

> Volumes shelved in the courtroom or Court's chambers shall not be removed from the area of the chambers or courtroom without permission of the Judge, Court Administrator, or Clerk. If such permission is granted, a card shall be placed in the location where the volume was removed. Any volumes removed from the courtroom or chambers must be returned within ten (10) days.

[10] Our case also differs materially from *Easterling*, in which it was also "undisputed . . . that the trial court closed the courtroom to the public and to [codefendant/appellant] Ricko Easterling during consideration of a codefendant's motions for severance and dismissal." *Easterling*, 157 Wn.2d at 182.

[11] *Bone-Club*, 128 Wn.2d 254 (before closing trial to public, court must weigh five factors on the record and make specific findings for those factors).

In my view, the majority errs in reversing and remanding for a new trial based on the absence of such *Bone-Club* findings.

## II. PUBLIC TRIAL RIGHT DOES NOT EXTEND TO PURELY LEGAL AND "HOUSEKEEPING" MATTERS

¶23 Even assuming, without conceding, that the trial court closed the courtroom, a defendant does not have a constitutional right to have the public present for in-chambers or bench conferences where the court and counsel address legal matters that do not require resolution of disputed facts. *State v. Rivera*, 108 Wn. App. 645, 653, 32 P.3d 292 (2001), *review denied*, 146 Wn.2d 1006 (2002); *see also Sadler*, 147 Wn. App. at 114 (defendant does not have right to public hearing on purely ministerial or legal issues that do not require the court to resolve disputed facts).[12]

¶24 Here, the trial court addressed three legal issues during the pretrial hearing: (1) whether certain photographs of Heath were admissible; (2) whether to prohibit the State from eliciting testimony that the police were executing a search warrant for stolen property at Heath's residence when they found her in possession of a firearm; and (3) whether to exclude a witness. The court also addressed housekeeping matters, such as who would introduce the

---

[12] *See also In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (defendant does not have right to be present for in-chambers or bench conferences between court and counsel on legal matters that do not require court to resolve disputed facts).

I acknowledge the following language from *Easterling*, which did not retreat from the principles I cite above and, in my view, does not apply to the facts here:

The public trial right extends beyond the taking of a witness's testimony at trial. It extends to pretrial proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (public trial right extends to preliminary hearing); [*In re Pers. Restraint of*] *Orange*, 152 Wn.2d [795,] 812[, 100 P.3d 291 (2004)] (public trial right extends to voir dire); *Bone-Club*, 128 Wn.2d at 257 (public trial right extends to pretrial suppression hearing). The public's constitutional right to the open administration of justice under article I, section 10 extends to pretrial motions to dismiss. [*Seattle Times Co. v.*] *Ishikawa*, 97 Wn.2d [30,] 36[, 640 P.2d 716 (1982)].

*Easterling*, 157 Wn.2d at 174.

defendant and witnesses, the time allotted for each party's jury voir dire, and generally how jury voir dire would proceed. Significantly, unlike the situation in *Easterling*, where the trial court expressly excluded Easterling and his attorney from hearings on Easterling's codefendant's pretrial motions, here, Heath was present at all times with her counsel.

¶25 Because Heath had no right to have the public present for these nontestimonial legal motions and housekeeping matters, the trial court was not required to engage in a *Bone-Club* analysis. And, even if there were such a requirement, Heath waived any right to demand such *Bone-Club* analysis for the first time on appeal when she failed to object below to the court's proposal to complete the pretrial motions in chambers.

### III. IN CHAMBERS VOIR DIRE OF JUROR EIGHT AND EXCUSAL FOR CAUSE

¶26 The three divisions of the Court of Appeals disagree about whether a hearing is "closed" where there is no explicit trial court order or ruling closing the hearing. Divisions Two and Three have held that conducting voir dire outside the courtroom constitutes a "closure" mandating a five-factor *Bone-Club* analysis, even where there is no explicit trial court order closing the courtroom or excluding the public from the room in which the voir dire is conducted. *Erickson*, 146 Wn. App. 200;[13] *Sadler*, 147 Wn. App. 97;

---

[13] In *Erickson*, the issue was whether the trial court must undertake a *Bone-Club* analysis before questioning individual jurors outside the courtroom or in the jury room. 146 Wn. App. at 204. The trial court asked the prospective jurors if any of them wanted to be interviewed "privately" and told them, "You have the option to ask to have your questions asked and answered with fewer people present. . . . [I]t's certainly possible that the answers may involve an area that you are uncomfortable talking about in front of such a large group." *Id.* (alterations in original). The trial court interviewed four jurors in the jury room with the court, counsel, and court reporter present. *Id.* Erickson did not object to this procedure. In a split decision, two of my colleagues held that "[b]ecause the decision to remove individual questioning of prospective jurors outside the courtroom has more than an inadvertent or trivial impact on the proceedings, . . . it acts as a closure for purposes of *Bone-Club.*" *Id.* at 209.

*State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007).[14] In contrast, Division One has held that such circumstances do not constitute a closure requiring a *Bone-Club* analysis. *Momah*, 141 Wn. App. 705.[15]

¶27 In my view, the circumstances here are more like those in *Momah*, which did not require a *Bone-Club* analysis. During its explanation about how the voir dire process would work, the trial court told Heath's jury venire:

> [I]f you want to say something but you really don't want to say it in public because you're concerned that maybe you might say something that you shouldn't say in front of everyone else, or if it's just a personal matter, just let me know that or let the attorneys know that when they ask you a particular question and I'll write your number down and we will take time to take all those people who are in that category, *we'll have you go one at a time into chambers*, the attorneys and myself, we'll go into chambers and on the record *in there you can tell us what it is you didn't want to say out in front of everybody else.*

RP (Aug. 8, 2007) Jury Voir Dire (JVD) at 12-13 (emphasis added). Initially, none of the jurors asked to be individually questioned in chambers. And no one, including Heath, objected to this proposed procedure.

¶28 Later in the voir dire process, however, Juror Eight answered affirmatively to several of the court's questions, including: (1) whether any juror had heard of the case before; (2) whether any juror knew Heath; (3) whether any juror knew Heath's husband; (3) whether any juror had talked with someone who claimed to have information

---

[14] In *Frawley*, Division Three implicitly held that a voir dire was closed to the public where it was conducted in chambers with "no discussion one way or the other about excluding the public." 140 Wn. App. at 720.

[15] Addressing the same issue as *Erickson*, Division One held in *Momah* that in the absence of a motion to close or an order closing the voir dire to the public, the *Bone-Club* analysis is not required prior to conducting voir dire of individual jurors in chambers. *Momah*, 141 Wn. App. at 714-16. In *Momah*, the court, counsel, defendant, and court reporter went into chambers, where counsel conducted voir dire of each juror who wanted private questioning. *Id.* at 710. The trial court never explicitly ordered that the voir dire be closed to the public. *Id.* at 711. The defendant requested that jurors be questioned individually, but it does not appear that he moved to have the proceedings closed to the public. *Id.*

about the charges against Heath; (4) whether any juror had had someone express an opinion to him or her about Heath's guilt or innocence; and (5) whether there was anything that would cause any juror to start the trial with any bias or prejudice. After Juror Eight answered the last question affirmatively, the trial court stated:

> Number 8, I'm—we're going to go ahead and interview you— I'm just going to put you down on the list right now and interview you in chambers, so the attorneys will not be asking you any questions except in chambers.

RP (Aug. 8, 2007) JVD at 16.

¶29 After the trial court completed its questioning of the jury venire in the courtroom, the State asked to interview Juror Eight "in chambers at this point [in the] interest of time and efficiency." Heath's counsel responded, "No objection"; the logical result of this statement should be a waiver of the alleged error.[16] And again, there was no objection voiced by anyone in the courtroom.

¶30 In "chambers,"[17] out of the presence of the rest of the jury venire but in the presence of at least Heath, both counsel, a court reporter, and the trial court, Juror Eight explained that his daughter worked with Heath and had shared information with him about the case. Juror Eight then stated:

> From what I know about the case, that [Heath] was illegally searched when the cop came to arrest her and he just was

---

[16] Heath's express statement "No objection," differs significantly from the mere failure to object, which the Supreme Court said in *Easterling* did not constitute a waiver, especially where the trial court did not "seek the defendant's objection to the courtroom closure" or "affirmatively provide Easterling with such an opportunity." 157 Wn.2d at 176 n.8.

[17] Nothing in the record shows that the door to the "law library/chambers" was closed or that the public was in anyway excluded. On the contrary, it appears from the record that questioning Juror Eight in "chambers" seemed to the parties and to the trial court to be the most effective way of questioning this juror out of the presence of the some 49 other jurors remaining in the venire, whom everyone wanted to insulate from Juror Eight's bias. (Although the record does not expressly mention the number of jurors in the venire, the record does refer to "Juror 50," which leads me to this reasonable inference about the number of jurors.)

looking for—to get her I guess I want to say. You know, I don't think he gave her a right shake. You pull over half the vehicles in this county and, you know, they got guns in 'em.

RP (Aug. 8, 2007) JVD at 21. The State moved to exclude Juror Eight for cause.

¶31 The trial court asked Juror Eight whether he had already made up his mind that "whatever contact the police had with Ms. Heath was illegal" and Juror Eight replied that he had. RP (Aug. 8, 2007) JVD at 23. Heath then asked Juror Eight whether he "would be able to set that aside . . . and just decide the case on the evidence" presented in court. RP (Aug. 8, 2007) JVD at 23. Juror Eight responded, "Not really, sir, to be truthful with you." The trial court then excused Juror Eight for cause.[18]

¶32 Citing *Bone-Club*, in *Easterling*, the Supreme Court noted that a courtroom closure presumptively, but not always, requires reversal. 157 Wn.2d at 174 n.4. The *Easterling* court further noted:

As we plainly stated in *Bone-Club*, "[a]lthough the public trial right may not be absolute, protection of this basic constitutional right clearly calls for a trial court *to resist a closure motion except under the most unusual circumstances*."

---

[18] Even though the trial court here did not articulate the *Bone-Club* factors, in my view, the record shows that the circumstances confronting the trial court here met all five factors:

"1. The proponent of closure . . . must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Easterling*, 157 Wn.2d at 175 n.5 (alterations in original) (quoting *Bone-Club*, 128 Wn.2d at 258-59).

*Easterling*, 157 Wn.2d at 174-75 (alteration in original) (quoting *Bone-Club*, 128 Wn.2d at 259). The situation here presents such "unusual circumstances": Juror Eight announced in open court, in front of the entire jury venire, that he might be biased and unable to try the case fairly. And, as it turned out, Juror Eight had, in fact, already prejudged the case based on discussions with his daughter, who worked with the defendant and had personal knowledge of the events, outside the evidence that would be presented in court. Other unusual circumstances apparently included the physical constraints of the small county's one-judge courthouse: The record does not show that there was a large enough alternative space to which the trial court could have moved the jury venire in order to question Juror Eight in the courtroom, out of earshot of the some 50 other potential jurors.

¶33 Here, as the trial court and the parties obviously recognized, to preserve the right to a fair trial, it was essential that Juror Eight be questioned away from the other potential jurors so that they would not be tainted by this juror's potentially biased answers and opinions. After Juror Eight affirmatively answered the trial court's question to the jury venire of whether there was anything that would cause any of the jurors to "start into the trial with any bias or prejudice," the trial court informed Juror Eight that the attorneys would not be asking him any questions "except in chambers." This exchange clearly reflects the trial court's recognition that Juror Eight's answering further questions could taint the rest of the jury venire. Again, the court's pronouncement of this plan did not expressly exclude the public,[19] and Heath expressly agreed to this procedure.

¶34 Completing part of Juror Eight's voir dire in the "law library/chambers" turned out to be critical because this juror said he knew too much about the case and could

---

[19] The trial court did not state that the public was excluded or that Juror Eight would be interviewed *in private*. RP (Aug. 8, 2007) JVD at 16, 18.

not be fair; thus, without objection by any party, the trial court excused this juror for cause. The trial court's handling of this special situation was " 'essential to preserve higher values' " of an unbiased jury and " 'narrowly tailored to serve that interest,' " even though the trial court did not expressly articulate this interest and need on the record. *Easterling*, 157 Wn.2d at 174 n.4 (internal quotation marks omitted) (quoting *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)).

¶35 I acknowledge that our Supreme Court in *Easterling* instructs that violation of a defendant's right to a public trial is not subject to harmless error analysis. 157 Wn.2d at 181. But Easterling was himself excluded from the proceedings at issue, which the Supreme Court noted negatively affected his right to a fair trial.[20] In contrast, here, it is clear that Heath cannot show prejudice resulting from the voir dire of Juror Eight in chambers, which led to this juror's excusal for cause. Juror Eight's statement to the trial court that he would not be able to set aside his knowledge of the case and decide Heath's guilt or innocence on the basis of the evidence constituted cause for his dismissal under both Criminal Rule 6.4(c) (trial court shall excuse juror for cause where court finds cause exists) and RCW 4.44.170(2) (juror may be challenged for cause when "actual bias" exists, meaning that the juror has such a "state of mind . . . in reference to . . . either party, which satisfies the court that *the challenged person cannot try the issue impartially*" (emphasis added)).

¶36 The trial court would have had to dismiss Juror Eight for cause even if it had questioned him in the courtroom in front of the entire venire. The only difference would have been that the trial court might then have been

---

[20] *Easterling*, 157 Wn.2d at 178:

This action undermined the fairness of the process by precluding Easterling from arguing for or against the motion to sever during the subsequent closed proceeding. We conclude that this impact upon the posture of Easterling's case warrants our holding that Jackson's motions and the proceedings relating to them were a part of Easterling's trial, thereby implicating his public trial rights.

compelled to excuse the venire and to summon new jurors, thus potentially jeopardizing other of Heath's constitutional rights, such as the right to a speedy jury trial. Heath suffered no prejudice by reason of the trial court's questioning and excusal for cause of Juror Eight in the "law library/chambers," a process to which she expressly voiced, "No objection." The record clearly shows that the trial court took necessary steps to preserve Heath's right to a fair and unbiased jury; and there is no showing of any reasonable alternative available to the court or proposed by either party.

¶37 That the trial court undertook this process, with the full concurrence of both parties, without articulating the *Bone-Club* factors on the record, should not result in automatic reversal of Heath's conviction, especially absent any showing of prejudice. I agree with the majority that in hindsight, this issue on appeal could have been avoided if the trial court had articulated a *Bone-Club* analysis on the record. But those are not the circumstances facing us today. I suggest that on the record before us, the trial court took reasonable and careful steps to ensure Heath a fair trial by an unbiased jury, with minimal action outside the courtroom: The trial court waited until the end of its general voir dire questions and then took only "biased" Juror Eight into chambers to interrogate him in Heath's presence but out of earshot of the others before excusing him for cause. Based on the record before us, there are no apparent alternative steps the trial court could have reasonably taken to ensure a fair trial under the circumstances in the Pacific County Courthouse that day. *Bone-Club* does not require automatic reversal.

IV. DENIAL OF STATE'S REQUEST TO INTERVIEW TWO OTHER JURORS IN CHAMBERS

¶38 Furthermore, the trial court's questioning of Juror Eight in chambers, with Heath's express concurrence, is in stark contrast with the trial court's denial of the State's

request to question two more jurors in chambers over Heath's objection. After the trial court excused Juror Eight, the State moved to interview in chambers two jurors who had not turned in their questionnaires; the State contended that this process would provide counsel and the court "the same information about them . . . as we would about everyone else." RP (Aug. 8, 2007) JVD at 25.

¶39 This time, however, Heath objected to interviewing these jurors in chambers, stating, "[T]hat's what voir dire is for." RP (Aug. 8, 2007) JVD at 26. And this time, the trial court required voir dire of the two jurors to occur in the courtroom, in the presence of the rest of the jury venire. The contrast between Heath's objection to in-chambers voir dire of these two jurors and her clearly stated "no objection" to in-chambers voir dire of Juror Eight further illustrates Heath's waiver of any objection to the trial court's failure to do a *Bone-Club* analysis on the record before questioning and excusing Juror Eight in chambers.

¶40 I ask the majority (1) to depart from applying the majority decisions in *Erickson* and *Sadler* to the compelling unusual circumstances here; (2) to refrain from automatic reversal based merely on the lack of an articulated *Bone-Club* analysis; and (3) instead, to apply the commonsense rationales of *Momah*, Judge Quinn-Brintnall's dissent in *Erickson*, and my dissent in *Sadler*. Such a result would not infringe on Heath's right to a fair, public trial, which the trial court here strived so carefully and diligently to protect. Again, I would affirm.