[No. 64100-0-I.   Division One.   August 8, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD EUGENE APPLEGATE, *Appellant*.

*Ronald E. Applegate*, pro se.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Hilary A. Thomas, Deputy*, for respondent.

¶1 LEACH, A.C.J. — A criminal defendant can waive his constitutional right to a public trial if that waiver is knowing, voluntary, and intelligent. Here, after a discussion with his attorney, Ronald Eugene Applegate consented to the in-chambers questioning of a single juror during jury selection. We hold that Applegate waived his public trial right.

¶2 Applegate also challenges his exceptional sentence on the basis that the aggravating factors found by the jury violated double jeopardy and due process provisions and constituted an improper retroactive application of a statutory amendment. Finally, Applegate raises several arguments in a statement of additional grounds. Because none of Applegate's arguments, whether raised through counsel or pro se, have merit, we affirm.

## FACTS

¶3 In 1996, the State charged Applegate with six counts of second degree rape of a child for incidents in 1988 and 1989 involving his wife's daughter, A.F., and niece, D.R.

Applegate fled to Oregon, where he lived under an alias.[1] He was arrested in 2004.[2]

¶4 Applegate's first trial occurred in the interim between the United States Supreme Court's decision in *Blakely v. Washington*[3] and our legislature's enactment of statutory procedures for submitting evidence of aggravating factors for sentencing to a jury.[4] Before that trial, the prosecutor filed a notice alleging three aggravating factors: "that the offenses were part of an ongoing pattern of domestic violence, were part of an ongoing pattern of sexual abuse, and resulted in the pregnancy of one of the child victims."[5] The trial court submitted the aggravating factors to the jury, which returned a guilty verdict on all six counts and "found each of the aggravating factors proved beyond a reasonable doubt."[6]

¶5 Applegate appealed to this court, arguing that at the time of his trial, the Sentencing Reform Act of 1981[7] did not yet authorize the trial court to submit the aggravating factors for jury determination.[8] The State conceded error, and this court vacated Applegate's sentence and remanded for further proceedings.[9] We held that the then-current version of RCW 9.94A.537(2)[10] authorized the trial court to

---

[1] *State v. Applegate*, 147 Wn. App. 166, 170, 194 P.3d 1000 (2008).

[2] *Applegate*, 147 Wn. App. at 170.

[3] 542 U.S. 296, 303-05, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (holding that aggravating factors must be submitted to the trier of fact).

[4] Former RCW 9.94A.537(2) (2005).

[5] *Applegate*, 147 Wn. App. at 171.

[6] *Applegate*, 147 Wn. App. at 171.

[7] Ch. 9.94A RCW.

[8] *Applegate*, 147 Wn. App. at 172.

[9] *Applegate*, 147 Wn. App. at 172, 177.

[10] Laws of 2007, ch. 205, § 1.

impanel a jury on remand to consider the alleged aggravating circumstances.[11]

¶6 On remand, the State presented to a jury evidence of two aggravating factors: ongoing pattern of domestic violence and ongoing pattern of sexual abuse. A.F. and D.R. testified for the State. A.F. told the jury that Applegate sexually abused her two to three times per week between the ages of 9 and 14, when she left home. On cross-examination, A.F. admitted that she initially denied the abuse to her mother.

¶7 D.R. testified that she began living with her aunt and Applegate when she was 6 years old. D.R. said that Applegate sexually abused her two to three times per week between the ages of 10 and 19. D.R. and A.F. further testified that Applegate's abuse resulted in D.R.'s pregnancy when she was 15 years old. D.R. admitted that she initially denied the abuse when questioned by family members and school counselors but said she did so because she was scared.

¶8 Applegate's wife and stepson testified in his defense. Both stated that they were unaware that any abuse had occurred.

¶9 The jury found each aggravating factor proved beyond a reasonable doubt. The trial court entered findings of fact and concluded that either one of the aggravating factors was a substantial and compelling reason justifying an exceptional sentence and imposed the 10-year statutory maximum.

## ANALYSIS

¶10 Applegate contends that by conducting a portion of jury selection in chambers, the trial court violated his right to a public trial under the Sixth Amendment to the United States Constitution and article I, sections 10 and 22 of the

---

[11] *Applegate*, 147 Wn. App. at 172.

Washington State Constitution. Because Applegate affirmatively waived his public trial rights for the purposes of privately questioning juror 2, we disagree.

¶11 During pretrial motions, the trial court announced, "Any jurors who wish to speak privately, we can address that. I still don't know if we have a verdict on the Momah and the Frawley cases from the Supreme Court. I don't think we do. I would expect to follow the Momah line of cases." The court asked if anyone would object "if an individual juror wishes to speak about some of the issues perhaps raised in the questionnaire or in voir dire that we take the public session into a less open setting." No one objected. Defense counsel stated, "I leave it entirely to the Court's discretion. This is not an issue for me." The prosecutor noted, however, that the determination was not entirely within the court's discretion: "So the defense counsel needs to address whether he objects or his client." The trial court responded,

> Under Momah, as I recall, it didn't even state that the factors need to be specifically addressed, because it still is a trial of record. We can still address those factors at another time. And I will direct Mr. Nelson to discuss that with his client and then to let us know what his client's wishes are in that regard.

During this discussion, the prosecutor observed that one member of the public was present in the courtroom. That person made no objection to the trial court's proposal.

¶12 Once voir dire had begun, the trial court indicated that juror 2 wished to speak in chambers. The following exchange occurred,

> THE COURT: Is there any member of the jury panel or any member of the public who is present who has an objection to our speaking with juror No. 2 I guess in my office? It would be a public proceeding. Any member of the public that is available to come in I will have the outer door open for that purpose.
>
> Is there any objection from anyone in the courtroom? Counsel, I evaluated the factors set forth by case law and I think all those factors have been met.

MR. SETTER: Except the record doesn't reflect that the defendant has no objection to that process or defense counsel.

THE COURT: That's the next question I'm going to ask, that in terms of I believe the five factors set forth referred to as the [*Bone-Club*] factors. I believe those have been met.

Mr. Nelson, do you or your client have any objection to—

MR. NELSON: No.

THE COURT: Are you speaking for yourself and for your client?

MR. NELSON: I'm not speaking for my client. I'm speaking for myself as his counsel. I don't know if he heard.

THE COURT: All right. Well, we have addressed it previously. I'll let you step into my [o]ffice to discuss it with him.

. . . .

MR. NELSON: For the record, I have talked it over with Mr. Applegate. He has no objection and I have no objection to going back into chambers and asking these questions without the public hearing.

THE COURT: It must remain a public proceeding. So I will open the doors to my office.

¶13 The individual voir dire of juror 2 then commenced, with the judge, Applegate, counsel, the clerk, and court reporter present in chambers. The judge stated, "Okay. We are in my chambers. Juror No. 2 is present. The inner and outer door to my chambers are open. The courtroom door is closed, but this must remain a public proceeding."

██ ¶14 We review de novo as a question of law whether this procedure violated Applegate's right to a public trial.[12] The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Similarly, article I, section 22 of the Washington Constitution guarantees, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial." And article I, section 10 secures the public's right to

---

[12] *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

open and accessible proceedings, mandating that "[j]ustice in all cases shall be administered openly." These provisions ensure a fair trial, foster public understanding and trust in the judicial system, and provide judges with the check of public scrutiny.[13] While the public trial right is not absolute, Washington courts strictly guard it to ensure that proceedings occur outside the public courtroom in only the most unusual circumstances.[14]

¶15 To protect a defendant's right to a public trial, our Supreme Court held in *Bone-Club*[15] that a trial court must apply and weigh five factors before closing a portion of a criminal trial. Under *Bone-Club*,

> "1. The proponent of the closure . . . must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
>
> "2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> "3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> "4. The court must weigh the competing interests of the proponent of closure and the public.
>
> "5. The order must be no broader in its application or duration then necessary to serve its purpose."[16]

¶16 In addition to applying and weighing the *Bone-Club* factors on the record, the trial court must enter specific

---

[13] *State v. Duckett*, 141 Wn. App. 797, 803, 173 P.3d 948 (2007) (citing *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005); *Dreiling v. Jain*, 151 Wn.2d 900, 903-04, 93 P.3d 861 (2004)).

[14] *Easterling*, 157 Wn.2d at 174-75 (quoting *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995)).

[15] 128 Wn.2d 254.

[16] *Bone-Club*, 128 Wn.2d at 258-59 (second alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

findings justifying its closure order.[17] Generally, if a trial court fails to follow these procedures, this court presumes prejudice,[18] reverses the conviction, and remands for a new trial.[19]

¶17 As a threshold matter, we consider the State's argument that questioning juror 2 in chambers was not a courtroom closure within the public trial rights context. When determining whether a courtroom closure occurred, we look to the plain language of the trial court's ruling.[20] "[O]nce the plain language of the trial court's ruling imposes a closure, the burden is on the State to overcome the strong presumption that the courtroom was closed."[21]

¶18 The State contends that Applegate must show that the judge expressly excluded the public by affirmatively ordering a closure. Relying on our decision in *Momah*,[22] as the trial court did, the State argues that Applegate cannot do so because the judge "intended to and did keep the proceeding open to the public" by calling the in-chambers proceeding "public" and leaving open the doors to chambers. We disagree.

¶19 In *Momah*, the record did not show either an express closure order or the actual exclusion of any member of the public. As a result, this court reasoned that Momah failed to demonstrate that a closure occurred when a portion of jury selection was held in chambers.[23] On review, the Supreme

---

[17] *Easterling*, 157 Wn.2d at 175; *Presley v. Georgia*, 558 U.S. 305, 130 S. Ct. 721, 725, 175 L. Ed. 2d 675 (2010) (a court must consider reasonable alternatives and articulate findings specific enough to permit review before closing jury selection proceedings (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984))).

[18] *Easterling*, 157 Wn.2d at 181.

[19] *Easterling*, 157 Wn.2d at 174.

[20] *Brightman*, 155 Wn.2d at 516.

[21] *Brightman*, 155 Wn.2d at 516.

[22] *State v. Momah,* 141 Wn. App. 705, 171 P.3d 1064 (2007), *aff'd*, 167 Wn.2d 140, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010).

[23] *Momah*, 141 Wn. App. at 706, 712.

Court appears to have rejected that rationale without a discussion because its decision assumes a closure occurred.[24] Therefore, while the trial court here did not expressly exclude the public from the individual questioning, the law does not require an express exclusion for Applegate to meet his burden.[25]

¶20 Generally, the decision to move individual questioning of prospective jurors from the courtroom into chambers acts as a closure and requires prior compliance with *Bone-Club*'s requirements.[26] Here, the trial court affirmatively moved voir dire from a public courtroom into chambers, making it private. The trial court recognized this when it called chambers a "less open setting." We find no principled basis to distinguish this case from others simply because the door between the courtroom and chambers was open and the judge called the proceeding public. A member of the public would not have recognized chambers as a public space just because the trial court said it was.[27] And had a member of the public attempted to observe the proceedings—something on which the record is silent—that person likely would not have understood that he could enter.

¶21 A trial court cannot have it both ways. Moving voir dire from a public courtroom to chambers due to privacy

---

[24] *Momah*, 167 Wn.2d at 156 ("We hold the closure in this case was not a structural error.").

[25] *State v. Sadler*, 147 Wn. App. 97, 113, 193 P.3d 1108 (2008) (citing *State v. Erickson*, 146 Wn. App. 200, 207-08, 189 P.3d 245 (2008)).

[26] *Momah*, 167 Wn.2d at 146-47, 151-52 (noting that a portion of voir dire occurred in chambers and discussing that procedure as a closure); *State v. Strode*, 167 Wn.2d 222, 227, 217 P.3d 310 (2009) ("Here, . . . the questioning of at least 11 prospective jurors took place in the judge's chambers, and 6 of them were challenged for cause. This process was closed to the general public. The trial judge's decision to allow this questioning of prospective jurors in chambers was a courtroom closure and a denial of the right to a public trial."); *Duckett*, 141 Wn. App. at 800-01; *State v. Frawley*, 140 Wn. App. 713, 718-21, 167 P.3d 593 (2007); *Erickson*, 146 Wn. App. at 211; *State v. Heath*, 150 Wn. App. 121, 127-28, 206 P.3d 712 (2009).

[27] We note that our Supreme Court has recently described a judge's chambers as "an inaccessible location." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011).

concerns but then calling the ensuing proceeding public does not make it so. Under *Bone-Club*, as we have stated, the court's constitutional obligation to balance a defendant's right to a public trial and a juror's privacy interest requires more. We reject the State's contention that no closure occurred.

■■ ¶22 The State next argues that Applegate explicitly waived his public trial right. We agree. A defendant's right to a public trial is one of a limited class of rights subject to structural error analysis on appeal.[28] Membership in this limited class, however, does not affect our analysis of whether a defendant may waive his right at trial.[29] An individual may waive a constitutional right, as long as that decision is knowing, voluntary, and intelligent.[30] To establish waiver in the public trial context, the record must show either that the defendant gave a personal statement expressly agreeing to the waiver or that the trial judge or defense counsel discussed the issue with the defendant prior to defense counsel's waiver.[31]

■ ¶23 Applegate characterizes his statement of no objection as a "failure to object." Applegate relies on the

[28] *Johnson v. United States*, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (listing as structural errors a total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instruction to jury (citing *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984))); *State v. Grenning*, 169 Wn.2d 47, 60 n.11, 234 P.3d 169 (2010) ("Structural errors include things like relieving the State of its burden of proof, denying a public trial, and denying counsel.").

[29] *See, e.g.*, *State v. Woods*, 143 Wn.2d 561, 585, 23 P.3d 1046 (2001) (noting that a defendant may waive right to counsel).

[30] *Strode*, 167 Wn.2d at 229 n.3 ("The right to a public trial is set forth in the same provision as the right to a trial by jury, and it is difficult to discern any reason for affording it less protection than we afford the right to a jury trial. It seems reasonable, therefore, that the right to a public trial can be waived only in a knowing, voluntary, and intelligent manner.").

[31] *Strode*, 167 Wn.2d at 235 (Fairhurst, J., concurring) ("[W]aiver of the right to a 12-person jury may be shown by a personal statement from the defendant expressly agreeing to waiver or an indication that the judge or defense counsel discussed the issue with the defendant prior to the attorney's waiving the right." (citing *State v. Stegall*, 124 Wn.2d 719, 729, 881 P.2d 979 (1994))).

following statement from *Bone-Club* to argue that his lack of an objection was not a waiver:

> We also dismiss the State's argument that Defendant's failure to object freed the trial court from the strictures of the closure requirements. To the contrary, this court has held an opportunity to object holds no "practical meaning" unless the court informs potential objectors of the nature of the asserted interests.[32]

Applegate did not simply fail to object. Nor did he merely acquiesce to the court's procedure. He stated through defense counsel on the record that he personally had no objection to the closure after he discussed the issue with counsel. Washington law requires no more. We hold that Applegate's statement constituted a knowing, voluntary, and intelligent waiver. Because Applegate waived his right to a public trial, he cannot now complain that the court interviewed juror 2 in chambers without first applying and weighing the *Bone-Club* factors on the record.

¶24 Applegate, however, asserts, "It is true that the trial court satisfied the second *Bone-Club* factor here by giving those present an opportunity to object, but the court's failure to address the other [*Bone-Club*] factors requires reversal." Applegate essentially argues that a defendant's waiver of the public trial right can never be effective unless the trial court first analyzes and weighs the *Bone-Club* factors on the record. We agree that *Bone-Club* requires more than an opportunity for a defendant to object to closure. But Applegate conflates *Bone-Club*'s requirements with his own ability to assert a right that he expressly waived. In *Momah*, for example, our Supreme Court affirmed a courtroom closure, based in part upon Momah's affirmative conduct, even though the trial court failed to analyze the *Bone-Club* factors.[33] Here, the State estab-

---

[32] *Bone-Club*, 128 Wn.2d at 261.

[33] *Momah*, 167 Wn.2d at 154-55; *Strode*, 167 Wn.2d at 234 (Fairhurst, J., concurring) ("[T]he court could properly conclude that [Momah] waived his public

lished a valid waiver. Whether the trial court properly analyzed and weighed the *Bone-Club* factors is a separate issue that we need not decide because Applegate's waiver of his public trial right precludes him from raising it.

¶25 Applegate's assignments of error also assert a violation of the public's right to open proceedings under article I, section 10. We do not consider this claim for two reasons. First, "A defendant should not be able to assert the right of the public or the press in order to overturn his conviction when his own right to a public trial has been safeguarded as required under *Bone-Club* or has been waived."[34] Here, because Applegate waived his right to a public trial, he cannot obtain a new trial by asserting the public's right. Second, Applegate provides no discrete argument relating to section 10. In his brief, he argues only a violation of his own right to a public trial. An appellant waives an assignment of error if he fails to support it with argument or citation to authority.[35]

¶26 We affirm.

¶27 The remainder of this opinion has no precedential value. It will be filed for public record in accordance with the rules governing unpublished opinions.[36]

ELLINGTON and APPELWICK, JJ., concur.

---

trial right. . . . While it is true the failure to object, alone, does not constitute waiver of the right to a public trial, the record in *Momah* shows more than a failure to object.").

[34] *Strode*, 167 Wn.2d at 236 (Fairhurst, J., concurring).

[35] RAP 10.3(a)(6); *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991).

[36] RCW 2.06.040.