**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

2014 MAR 10 AM 11:53

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

IN THE MATTER OF THE ) 
PERSONAL RESTRAINT PETITION )   DIVISION ONE
OF: )
  )
  )   No. 71367-1-I
JAMES CURTIS ROWLEY, )
  )   UNPUBLISHED OPINION
        Petitioner. )
  )   FILED: March 10, 2014

DWYER, J. — James Rowley filed this personal restraint petition

challenging his restraint pursuant to his 2008 conviction for child molestation in

the first degree.[1] Rowley asserts that the attorney who represented him during

the direct appeal of his conviction provided him with constitutionally ineffective

assistance because the attorney did not assign error to the incomplete court

closure analysis employed by the trial court prior to questioning jurors in

chambers. Rowley's position is meritorious; he is entitled to collateral relief.

I

In 2008, Rowley was convicted of child molestation in the first degree. As

his trial began, prior to jury selection, the trial court stated that "my preference as

you all know is to allow the jurors to come back individually into chambers." The

trial court recognized that there was "a Division Three case that deals with that

---

[1] A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim. RCW 9A.44.083(1).

issue,"[2] and asked defense counsel if he had any objection to the procedure. Defense counsel stated that he had no objection. In this proceeding, defense counsel certified that because the procedure "was a common practice," he "did not consider that private questioning might implicate the right to an open and public trial." Thus, defense counsel never advised Rowley that private questioning of jurors implicated his right to a public trial.

Voir dire commenced on May 30, 2008. The trial court informed the jurors that "it may be available to you to say could we take this question up in the privacy of chambers." The trial court then asked those members of the public present in the courtroom if any of them "object to that procedure being utilized in this jury selection process today?" No one objected. Ultimately, the trial court questioned seventeen jurors in chambers. The prosecutor, defense counsel, a court reporter, Rowley, and the trial judge were all present in chambers during questioning. Eleven of the seventeen jurors privately questioned were dismissed for cause.

The jury found Rowley guilty of child molestation in the first degree. The trial court entered judgment and sentenced Rowley on July 14, 2008. The trial court found that Rowley was a persistent offender and sentenced him to life in prison without the possibility of early release.[3]

Rowley appealed, and Division Two affirmed the judgment and sentence.

---

[2] This was an apparent reference to State v. Duckett, 141 Wn. App. 797, 173 P.3d 948 (2007), review denied, 176 Wn.2d 1031 (2013).

[3] "Notwithstanding the statutory maximum sentence or any other provision of this chapter, a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." RCW 9.94A.570.

No. 71367-1-I/3

The Division Two mandate issued on November 5, 2009. On November 2, 2010, Rowley filed this personal restraint petition challenging his restraint resulting from the conviction and sentence. The petition was stayed pending the Supreme Court's resolution of State v. Wise, 176 Wn.2d 1, 288 P.3d 1113 (2012), and State v. Paumier, 176 Wn.2d 29, 288 P.3d 1126 (2012). After the stay was lifted, Division Two transferred the case to us.

II

Rowley contends that he is entitled to relief from restraint and a new trial because his appellate counsel was ineffective for failing to raise the public trial issue on direct appeal. Case law establishes the merit of his assertion.

A

"To prevail on a claim of ineffective assistance of appellate counsel, [a petitioner] must demonstrate the merit of any legal issue appellate counsel raised inadequately or failed to raise and also show [that he] was prejudiced." In re Pers. Restraint of Netherton, 177 Wn.2d 798, 801, 306 P.3d 918 (2013) (citing In re Pers. Restraint of Lord, 123 Wn.2d 296, 314, 868 P.2d 835, 870 P.2d 964 (1994)).

Both the federal and state constitutions guarantee to criminal defendants the right to a public trial.[4] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The

---

[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI.
"In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." WASH. CONST. art. I, § 22.

No. 71367-1-I/4

Washington Constitution also guarantees the right of an open trial to the public.[5] WASH. CONST. art. I, § 10. This right extends to voir dire. Paumier, 176 Wn.2d at 34.

However, the public trial right is not absolute. Paumier, 176 Wn.2d at 34-35. The trial court may close the court so long as it considers and correctly applies the five factors outlined in State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995). Those five factors are:

> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
>
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> 4. The court must weigh the competing interests of the proponent of closure and the public.
>
> 5. The order must be no broader in its application or duration than necessary to serve its purpose."

Bone-Club, 128 Wn.2d at 258-59 (alteration in original) (quoting Allied Daily Newspapers v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)). The trial court must "resist a closure motion except under the most unusual circumstances." Bone-Club, 128 Wn.2d at 259.

Our Supreme Court has declared that privately "questioning potential jurors is a courtroom closure requiring a Bone-Club analysis. Failure to conduct

---

[5] "Justice in all cases shall be administered openly, and without unnecessary delay." WASH. CONST. art. I, § 10.

- 4 -

the Bone-Club analysis is structural error warranting a new trial because voir dire is an inseparable part of trial." Paumier, 176 Wn.2d at 35 (citing Wise, 176 Wn.2d at 11-12, 15); accord In re Pers. Restraint of Morris, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012); State v. Strode, 167 Wn.2d 222, 228, 230-31, 217 P.3d 310 (2009); State v. Brightman, 155 Wn.2d 506, 515-16, 122 P.3d 150 (2005); In re Pers. Restraint of Orange, 152 Wn.2d 795, 804-05, 100 P.3d 291 (2004).

Here, the trial court did not conduct a complete closure analysis. The trial judge partially complied with the Bone-Club directive by (1) recognizing the closure issue; (2) asking the prosecutor and defense counsel if they had any objection; and (3) asking those members of the public who were in the courtroom whether any of them objected. However, the trial judge did not consider whether a compelling interest demanded closure, did not consider whether questioning jurors in chambers was the least restrictive closure possible, and did not weigh the competing interests of Rowley and the public.[6] The trial court erred by failing to address these factors. This constituted structural error. Paumier, 176 Wn.2d at 35; Wise, 176 Wn.2d at 12-13.

Waiver principles do not apply. "To establish waiver in the public trial context, the record must show either that the defendant gave a personal statement expressly agreeing to the waiver or that the trial judge or defense counsel discussed the issue with the defendant prior to defense counsel's waiver." State v. Applegate, 163 Wn. App. 460, 470, 259 P.3d 311 (2011),

---

[6] To the contrary, the trial court began by stating that it was his preference to question jurors individually in chambers. This was contrary to the directive that the court must "resist a closure motion except under the most unusual circumstances." Bone-Club, 128 Wn.2d at 259.

review granted, 176 Wn.2d 1032, 299 P.3d 19 (2013). The record here demonstrates neither. Rowley's counsel assented to the private questioning of jurors, but Rowley never personally expressed such consent. The record does not indicate that Rowley was ever advised of his right to a public trial, and Rowley, in this proceeding, certifies that the judge, prosecutor, and his attorney never advised him of this right. Rowley's trial counsel also certifies (in this proceeding) that he did not explain to his client "that private questioning implicated his right to an open and public trial." "[A] defendant must have knowledge of a right to waive it." Morris, 176 Wn.2d at 167.[7] In this proceeding, Rowley submits that "If my rights had been explained to me and if I had been asked, I would not have waived my right to an open and public trial." Because Rowley had no knowledge of his right to a public trial, he cannot be held to have waived that right.

Thus, the public trial issue that appellate counsel failed to raise had merit.

B

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must meet the standards articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

> Strickland recognized that the Sixth Amendment's guarantee that
> "[i]n all criminal prosecutions, the accused shall enjoy the right . . .
> to have the Assistance of Counsel for his defence" entails that
> defendants are entitled to be represented by an attorney who

---

[7] In Morris, four justices joined the lead opinion. Justice Chambers concurred in the majority's analysis and result, creating a majority view on the issues pertinent to this petition.

meets at least a minimal standard of competence. Id., at 685-687. "Under Strickland, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, supra, at 688, 694).

Hinton v. Alabama, 571 U.S. ___, slip op. No. 13-6440 at *9-10 (2014) (alterations in original); accord State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

The United States Supreme Court recently characterized the first step of this test as follows:

"The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Padilla, supra, at 366 (quoting Strickland, supra, at 688). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, supra, at 688.

Hinton, slip op. No. 13-6440 at *10.

Actions taken by defense counsel that lead to an unfavorable result are not necessarily constitutionally deficient:

Under Strickland, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690-691.

Hinton, slip op. No. 13-6440 at *11.

In <u>Morris</u>, 176 Wn.2d 157, our Supreme Court applied the <u>Strickland</u> test to a personal restraint petitioner's ineffective assistance of appellate counsel claim premised upon the failure to raise a public trial issue on direct appeal. In that case, the trial court announced that some prospective jurors would be interviewed privately, but did not first consider any of the <u>Bone-Club</u> factors, nor did it discuss or acknowledge Morris's public trial rights. <u>Morris</u>, 176 Wn.2d at 161-62. At the time, "[n]either the State nor counsel for Morris moved for the private voir dire and neither objected to conducting the proceedings in chambers." <u>Morris</u>, 176 Wn.2d at 162. Morris was convicted of two counts of first degree sexual molestation and one count of first degree rape. <u>Morris</u>, 176 Wn.2d at 161. Morris appealed, but appellate counsel did not raise the public trial issue. <u>Morris</u>, 176 Wn.2d at 164.

"An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under <u>Strickland</u>." <u>Hinton</u>, Slip Op. No. 13-6440 at *11. Morris's appellate counsel "should have known to raise the public trial right issue on appeal." <u>Morris</u>, 176 Wn.2d at 167. This was so because "Morris's appellate counsel had but to look at this court's public trial jurisprudence to recognize the significance of closing a courtroom without first conducting a <u>Bone-Club</u> analysis." <u>Morris</u>, 176 Wn.2d at 167. Because Morris's appellate counsel ignored law fundamental to his appeal, the court held that appellate counsel's performance was deficient. <u>Morris</u>, 176 Wn.2d at 167.

Appellate counsel's performance during Rowley's direct appeal was

similarly deficient. Rowley appealed his conviction in 2008. By the time his direct appeal was decided in June 2009, the following cases had been published deeming the procedural failure by the trial court to be a violation of the public trial right: Brightman, 155 Wn.2d 506; Orange, 152 Wn.2d 795; State v. Heath, 150 Wn. App. 121, 206 P.3d 712 (2009); State v. Sadler, 147 Wn. App. 97, 193 P.3d 1108 (2008), review denied, 176 Wn.2d 1032 (2013), overruled in part sub nom by State v. Sublett, 176 Wn.2d 58, 292 P.3d 715 (2012); State v. Erickson, 146 Wn. App. 200, 189 P.3d 245 (2008), review denied, 176 Wn.2d 1031 (2013); State v. Momah, 141 Wn. App. 705, 171 P.3d 1064 (2007), aff'd, 167 Wn.2d 140, 217 P.3d 321 (2009); State v. Duckett, 141 Wn. App. 797, 173 P.3d 948 (2007), review denied, 176 Wn.2d 1031 (2013); State v. Frawley, 140 Wn. App. 713, 167 P.3d 593 (2007), review granted, 176 Wn.2d 1030, 299 P.3d 19 (2013). Appellate counsel needed only to have studied a few of these cases to have known to raise the public trial issue. Counsel's failure to do so constituted deficient performance.

Once a petitioner has shown deficient performance he "must also 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Hinton, slip op. No. 13-6440 at *12 (quoting Strickland, 466 U.S. at 694). In Morris, our Supreme Court held that the petitioner established prejudice because the result of his direct appeal would certainly have been different had his appellate counsel raised the public trial issue. Specifically, "[i]n Wise and Paumier, we clearly state

that a trial court's in-chambers questioning of potential jurors is structural error. Had Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial." Morris, 176 Wn.2d at 166.

Similarly, here, Rowley would have received a new trial had his appellate counsel raised the public trial issue. Although the trial court recognized the public trial issue and conducted a partial closure analysis, it did not fully comply with the Bone-Club requirements. Wise condemns this error as a structural one. Had this error been raised on appeal, Rowley would have necessarily received a new trial. See Wise, 176 Wn.2d at 19. Because he would have received a new trial, Rowley was prejudiced by his appellate counsel's failure to raise the public trial issue on direct appeal.

Here, as in Morris, "where appellate counsel fails to raise a public trial right claim, where prejudice would have been presumed on direct review, a petitioner is entitled to relief on collateral review." 176 Wn.2d at 161. Therefore, Rowley's personal restraint petition is granted and his case remanded to the superior court with orders to vacate Rowley's conviction and conduct any further necessary proceedings, consistent with this opinion.

The petition is granted.

We concur:

- 10 -